UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

- against -

JUAN ANGEL NAPOUT, *et al.*,

                      Defendants.
-------------------------------------------------------X

**MEMORANDUM & ORDER GRANTING GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF OBSTRUCTION OF JUSTICE**

15-CR-252 (PKC)

PAMELA K. CHEN, United States District Judge:

The government has moved *in limine* to admit certain obstruction of justice evidence at the trial of Defendants Juan Angel Napout, Jose Maria Marin, and Manuel Burga (Gov. Motion *in Limine*, Dkt. 673), scheduled to begin on November 6, 2017. This evidence the government seeks to introduce falls into two categories: (1) testimony of three cooperating witnesses about their own efforts to obstruct justice by concealing bribe payments they made or received in connection with FIFA matters; and (2) testimony of witnesses about the removal of electronic devices from Napout's CONMEBOL office. (Dkt. 673 at 1.) Marin opposes the admission of this evidence on the ground that the acts of obstruction or attempted obstruction were committed by individuals other than Marin and occurred after the alleged RICO conspiracy was over. (*See* Marin Opp'n, Dkt. 687 at 1.) Napout argues that the government's evidence of Napout's supposed obstruction is insufficient to permit the admission of this evidence. (*See* Napout Opp'n, Dkt. 688 at 2-3.)[1] The Court held oral argument on the government's motion on October 10, 2017.

---

[1] Burga did not separately respond, but joined in the responses of his co-Defendants. (Dkt. 690 at 1.)

For the reasons set forth herein, the Court finds that all of the proffered obstruction of justice evidence is admissible as proof of the alleged RICO conspiracy.[2] The Court further finds that the evidence of Napout's alleged obstruction of justice is also admissible as to him pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)"). The Court defers ruling on the government's request to admit the obstruction of justice evidence as proof of a predicate act until trial.

## BACKGROUND

### A. Government's Motion *In Limine*

In its motion, the government explains that at trial, it "will present evidence of the numerous ways in which the defendants and their co-conspirators took steps to conceal their crimes and the corruption of the enterprise[,] . . . [and] will further prove that the conspirators in some instances went beyond mere concealment and engaged in obstruction of justice in violation of 18 U.S.C. § 1512 as part of the alleged pattern of racketeering activity." (Dkt. 673 at 2 (citing the Second Superseding Indictment ("Ind.") ¶¶ 61, 84-85, 123).) The government identifies four instances of obstruction of justice that it intends to prove at trial:

> (A) Witness 1, a former owner of a sports marketing company that engaged in bribery of soccer officials, is expected to testify that, after he became aware of the government's investigation but prior to his cooperation, he on several occasions urged a former co-conspirator whom he believed to be cooperating in the investigation not to tell the government that Witness 1 and his company had made illicit payments to the former co-conspirator in the past.
>
> (B) Witness 2, a former employee of a sports marketing company that engaged in bribery of soccer officials, is expected to testify that in the days following the unsealing of the original indictment on May 27, 2015, Witness 2 observed employees of the sports marketing company destroying documents in a shredding machine. Witness 2 is also expected to testify that he observed bags of shredded documents near the shredding

---

[2] As noted *infra*, the evidence relating to Napout's alleged obstruction of justice is only being conditionally admitted at this time, subject to proof that at least one of the individuals, other than Napout, involved in the removal of Napout's electronic devices were members of the alleged RICO conspiracy.

2

machine, and that, during this same period, Witness 2 caused the contents of a computer server to be erased.

(C) Witness 3, a former soccer official and recipient of bribe payments, is expected to testify that, prior to cooperating but after learning of the government's investigation, he instructed a co-conspirator to create a sham contract to justify a bribe payment. At the time, Witness 3 also instructed the co-conspirator that if he were ever approached by U.S. law enforcement, the co-conspirator should lie and refer to the sham contracts if asked to explain the bribe payments.

(D) Witnesses are expected to testify about the removal of electronic devices from Napout's CONMEBOL office, at Napout's direction, on the morning of Napout's December 3, 2015 arrest in Zurich, Switzerland and the subsequent recovery and search of those devices by U.S. law enforcement.

(Dkt. 673 at 2-3.)

The government argues that, "[a]mong other things, th[is] evidence will constitute proof of predicate crimes alleged in the Indictment, see Ind. ¶ 123, and will help demonstrate the corruption of the enterprise through a pattern of racketeering activity, the purposes and methods of the conspirators in committing the acts within the racketeering pattern, that the racketeering acts constitute a pattern of racketeering activity with the threat of continued criminal activity, and the relatedness of Napout's obstruction to the other acts of obstruction in the racketeering pattern, see id. ¶¶ 61, 84-85." (Dkt. 673 at 5.) The government contends that, in addition to establishing the obstruction of justice predicate acts charged as "part of the racketeering activity alleged in the Indictment", the evidence of obstructive conduct is also relevant to proving the racketeering conspiracy more generally. (*Id.*) The government further argues that the probative value of this evidence is not "substantially outweighed" by the danger of unfair prejudice. (Dkt. 673 at 5.) With respect to the evidence of Napout's alleged obstruction of justice, the government alternatively argues that this evidence is admissible pursuant to Rule 404(b) to show Napout's consciousness of guilt and thus his knowledge and intent with respect to the charged crimes.

B.   **Defendants' Opposition**

Marin and Napout each filed a response to the government's motion; Burga joined those responses. Marin argues that "the purported obstructive conduct, committed by individuals other than Marin and after the government's investigation became public, falls well outside the central purpose of the alleged conspiracy and thus has little, if any, probative value." (Dkt. 687 at 1.) Marin contends that the alleged obstructive acts should be treated as a separate conspiracy. (*Id.* at 4-5.) Consequently, Marin contends, the relevance of such evidence is substantially outweighed by the unfair prejudice to Marin. (*Id.*) Marin further argues that if the Court decides to admit the evidence of Napout's alleged obstruction under Rule 404(b), the Court should sever Marin's case because a limiting instruction to the jury would not be enough to prevent harm to his defense. (*Id.* at 6.)

Napout argues that the government has provided insufficient details for defense counsel or the Court to address the admissibility of the evidence at this time. (Dkt. 688 at 1.) Napout intends to object to the admission of this evidence at trial on the ground that the evidence of Napout's supposed obstruction is insufficient to disprove Napout's innocent explanation for the removal of his electronic devices. (*Id.*) According to Napout, if the government is unable to present evidence that Napout requested the removal of the devices for an unlawful purpose, the jury should not be permitted to speculate that the computer's removal is evidence of Napout's guilt.

## DISCUSSION

I.   **Admissibility of the Evidence to Prove Predicate Acts**

The government argues that the obstruction evidence involving Witnesses 1, 2, and 3 should be admitted to establish predicate acts charged as part of the racketeering conspiracy. While the Indictment alleges obstruction of justice under Section 1512 as a predicate act committed as

part of the racketeering activity (S-2 Ind. at ¶ 123), none of the indictments returned in this case[3] identifies obstructive conduct engaged in by any defendant. Thus, it is unclear whether the acts of obstruction that the government seeks to prove at trial were ever charged as part of an indictment returned in this case.[4] Although an indictment need not allege the specific facts underlying a charge, *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam), given the possibility that some of the obstructive conduct that the government seeks to prove as predicate acts charged in the indictment was not known to the government at the time the grand jury returned the S-1 indictment, the Court declines to rule at this time on whether evidence of these acts may be admitted to prove Section 1512 predicate acts, and reserves its determination on this issue until trial. However, because the Court finds, as discussed next, that the obstruction of justice evidence can be admitted as general proof of RICO conspiracy, the Court's ruling on the predicate acts issue will affect only the government's summation and, potentially, the Court's charges to the jury.

## II. Admissibility of the Evidence to Show RICO Conspiracy Generally

To prove racketeering, the government must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *see United States v. Reifler*, 446 F.3d 65, 91 (2d Cir. 2006)

---

[3] Three indictments have been returned by the grand jury—the original indictment, the First Superseding Indictment ("S-1 indictment"), and the Second Superseding Indictment ("S-2 indictment"). The S-2 indictment was obtained by the government, in part, to narrow the indictment to the case to be presented against Napout, Marin, and Burga at the upcoming trial. Only Marin has been charged in all three indictments; Napout and Burga have only been charged in the S-1 and S-2 indictments.

[4] Indeed, based on the government's description of the four instances of obstruction of justice in its motion, it is clear that the conduct engaged in by Witness 2 could not have been contemplated in the original indictment—since it occurred after the unsealing of that indictment—and Napout's alleged obstructive conduct could not have been contemplated in the original or S-1 indictments—since it occurred after the unsealing of the S-1 indictment.

(racketeering requires proof of "multiple racketeering predicates—which can be part of a single 'scheme'—that are related and that amount to, or threaten the likelihood of, continued criminal activity") (quoting *United States v. Coiro*, 922 F.2d 1008, 1016 (2d Cir.), *cert. denied,* 501 U.S. 1217 (1991)). Evidence of uncharged criminal acts committed by a RICO defendant's co-conspirators may be introduced as direct evidence of the existence of the enterprise and pattern of racketeering activity, without resort to Rule 404(b).

Here, the government argues that the proffered obstruction of justice evidence is admissible to prove, *inter alia*, the corruption of the enterprise as part of the RICO conspiracy, that the racketeering acts constitute a pattern of racketeering activity with the threat of continued criminal activity, and the relatedness of Napout's obstruction to the other acts of obstruction in the racketeering pattern. The government intends to show that the proffered obstructive conduct, which includes schemes to avoid investigators, shred important documents, create sham contracts, and remove electronic devices containing incriminating information, is linked to the global bribery, wire fraud, money laundering, and other obstruction of justice offenses allegedly committed by Defendants and their co-conspirators, and was undertaken for the purpose of concealing these activities and perpetuating the conspiracy's corruption of FIFA.[5]

The Court finds the reasoning of the Honorable Nicholas G. Garaufis in *United States v. Herron*, No. 10-CR-615 (NGG), 2014 WL 1894313 (E.D.N.Y. May 12, 2014), instructive on this issue. There, the government sought to introduce evidence that the defendant, who was charged with participating in a RICO conspiracy, had tampered with evidence and witnesses in an effort to

---

[5] At oral argument, the government further explained that the evidence at trial will show that throughout the 20-year history of the alleged RICO conspiracy, the co-conspirators have engaged in a pattern of concealing the corrupt activities of the conspiracy from detection by, among others, their own soccer organizations or confederations, banking authorities, governmental agencies, and law enforcement.

prevent his arrest and prosecution. (*Id*. at 2-3.) Though, like here, the defendant's obstructive conduct arguably fell "outside the central purpose of the alleged conspiracy" (Dkt. 687 at 1), Judge Garaufis found that the obstruction of justice evidence had a tendency to show that the criminal acts that the defendant sought to conceal through the obstruction were not "isolated" acts, but were "'related' to the criminal enterprise and, to a lesser extent, to each other[.]" 2014 WL 1894313, at *5. Judge Garaufis also found that the obstructive conduct was "probative of the 'continuous' nature of [the defendant's] conduct because such obstruction of justice enabled the racketeering activity to continue unabated." *Id*. Lastly, Judge Garaufis held that the obstruction of justice was also probative of the enterprise's efforts to preserve and protect its power and criminal ventures. *Id*. (noting that "evidence used to establish the 'pattern' of racketeering 'may in particular cases coalesce' with evidence of the existence of the enterprise") (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Judge Garaufis accordingly concluded that the obstruction of justice evidence was "undoubtedly admissible as direct proof of racketeering and racketeering conspiracy" as charged in the indictment. *Id*.[6]

The same reasoning applies to this case. Evidence that members of the alleged RICO conspiracy committed obstruction of justice at various times during the conspiracy's 20-year duration—including after the government's investigation became public and after the arrests of members of the conspiracy—in order to conceal criminal activities undertaken as part of the conspiracy, is relevant to showing that these criminal activities were related to the conspiracy and each other. The evidence is also relevant to show the continuous nature of the conspiracy and its use of obstruction to preserve and protect its power and criminal ventures.

---

[6] Notably, Judge Garaufis also rejected the defendant's argument that the obstruction of justice evidence should not be admitted because the government had "provided insufficient details for defense counsel or the court to address the admissibility of the evidence." *Id*. at *3.

In opposing the admission of this evidence, Defendants rely primarily on the Supreme Court's decision in *Grunewald v. United States*, 353 U.S. 391 (1957), in which the Court held that an "act[] of concealment done after [the] central objectives [of the conspiracy] ha[d] been attained, for the purpose only of covering up the crime" could not be considered part of the charged conspiracy, so as to extend the statute of limitations. *Id*. at 405. Yet the facts of *Grunewald* render it largely inapplicable to this case. *Grunewald* involved a single, short-lived conspiracy to impede tax fraud prosecutions through bribery and other means. *Id*. at 394 (defendants conspired to "fix" tax cases between 1947 and 1948). The termination of the conspiracy in *Grunewald* was clearly demarcated by the obtaining of a discrete number of "no prosecution" rulings in the Tax Court. *Id*. at 395 (rulings handed down between 1948 and 1949). The alleged cover-up did not occur for another three years. *Id*. at 396 (obstruction directed at grand jury convened in 1952).

By contrast, Defendants here are charged in a global RICO conspiracy that has existed for at least 20 years, during the course of which, the government alleges, there have been repeated efforts to conceal the conspiracy's criminal activities from law enforcement and other agencies and institutions. Given that this is a RICO case, the government must prove the relatedness and continuity of the racketeering activity engaged in by Defendants and their co-conspirators. Furthermore, unlike in *Grunewald*, the activities of the RICO conspiracy charged here did not cease after the disclosure of the government's investigation or after the arrests of members of the conspiracy. The government intends to show that the proffered acts of obstruction were carried out in order to protect the conspiracy and to allow it to continue to achieve its "central objectives" of engaging in corrupt acts in connection with the operation of FIFA. Thus, the Court finds that *Grunewald* does not preclude admission of the government's obstruction of justice evidence in this case.

8

The Court similarly is not persuaded by Defendants' argument that any obstruction of justice committed by Witnesses 1, 2, and 3, and Napout can only be viewed as acts of self-preservation, *i.e.*, conduct undertaken solely to "save themselves" (as urged at oral argument), or that the Court should or can make that determination. It is for the jury to decide whether these alleged acts of obstruction show the pattern of racketeering alleged in the indictment or whether they were unrelated acts of self-preservation by alleged members of the conspiracy.[7] At this stage, the Court determines only that they are relevant evidence with respect to the alleged RICO conspiracy.

The Court, therefore, concludes that the proffered obstruction of justice evidence is admissible to show that Defendants and their co-conspirators attempted to prevent the detection of their criminal activities as part of a broader pattern of conspiratorial conduct. *See United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992) ("Proof of these elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant . . . .").[8]

---

[7] The Court's ruling regarding the admissibility of evidence of Napout's alleged obstruction of justice to prove the alleged RICO conspiracy generally is conditioned upon the government introducing evidence that at least one other person involved in the obstructive conduct, besides Napout, was a member of the charged conspiracy prior to the alleged obstruction. *See* Fed. R. Evid. 104(b). Absent this evidence, Napout's attempt to thwart the government's investigation of him is not probative of the existence of the charged RICO conspiracy; rather, it would merely be evidence of Napout's efforts to "save his own skin," which would be admissible pursuant to Rule 404(b) only as to Napout, as discussed further below.

[8] As the Court noted at oral argument, at a minimum, the obstructive conduct of Witnesses 1, 2, and 3 may be introduced by the government, in its case in chief, as *Giglio* evidence relating to each of those witnesses. Though Defendants suggested at the argument that this evidence could only be brought out during the defense's cross-examination of these witnesses, they offer no support for this proposition. In any event, the Court disagrees. The government will be permitted to elicit this evidence during its direct examination of its cooperating witnesses.

### III. Admissibility of Government's Obstruction of Justice Evidence as to Defendant Napout under Rule 404(b)

In addition to finding that evidence of Napout's alleged obstruction may be admissible as general evidence of the RICO conspiracy, the Court finds that this evidence is admissible against Napout pursuant to Rule 404(b).

Rule 404(b) states, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). But a court may admit "other act" or "crime" evidence for the purpose of addressing "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Three requirements must be satisfied in order for evidence of "[c]rimes, wrongs or other acts" to be admitted under Rule 404(b). First, the evidence must be offered for a purpose other than to prove the defendant's bad character or criminal propensity. *See United States v. Mickens*, 926 F.2d 1323, 1328 (2d Cir. 1991) (quotation omitted). Second, the evidence must be relevant under Federal Rules of Evidence 401and 402 and satisfy the balancing test under Federal Rule of Evidence 403 ("Rule 403"). *Id.* at 1328. Third, the court must instruct the jury about the limited purpose for which the government's evidence is being admitted if the defendant so requests. *Id.* at 1328-29.

The Court finds that all three requirements are satisfied to admit evidence of Napout's obstruction of justice under Rule 404(b). First, the government does not introduce the evidence to prove Napout's propensity for criminality. Instead, the government offers the evidence to prove Napout's knowledge and intent with regard to the charged crimes through evidence of his consciousness of guilt. (Dkt. 673 at 8-9). Second, as discussed below, the evidence is not "more sensational or disturbing" than the alleged bribery conspiracies in which he and his co-conspirators are alleged to have engaged. (*See* discussion of Rule 403 *infra* at 11-12.) Given the specific nature

10

of Napout's alleged obstruction, *i.e.*, the removal of *his* electronic devices from *his* CONMEBOL office, the Court does not anticipate a "spillover" effect that could prejudice Marin and Burga. *United States v. Ashburn*, No. 11-CR-303 (NGG), 2015 WL 588704, at *25 (E.D.N.Y. Feb. 11, 2015). Nor does the Court find that any prejudice resulting from this evidence substantially outweighs its probative value. *See infra* at 11-12. Third, to the extent appropriate, the Court can address any potential prejudice through a curative instruction. *See United States v. Clemente*, 22 F.3d 477, 483 (2d Cir. 1994) (approving the district court's instruction that the defendants were "not on trial for any crimes except for those that were charged in the indictment").[9]

Accordingly, evidence relating to alleged obstruction of justice by Napout is admissible to show his knowledge and intent under Rule 404(b).[10]

## IV. The Evidence Is Not Unfairly Prejudicial

Federal Rule of Evidence 403 gives the trial court discretion to exclude evidence that is "otherwise relevant and admissible," where admission of the evidence would be unfairly prejudicial to the defendant. *Ashburn*, 2015 WL 588704, at *23 (citing *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999)). In determining whether to exclude evidence of crimes by a defendant's co-conspirators under Rule 403, the Court must balance the probative value of the evidence with

---

[9] Because the evidence of Napout's alleged obstruction could be admitted as general evidence of the RICO conspiracy, which the jury may consider in deciding whether the racketeering charges against Marin and Burga are proved, it is not clear that any curative instruction is warranted.

[10] As indicated, Marin requests severance in the event the Court permits the introduction of the obstruction evidence relating to Napout. The Court reiterates its denial of this request from the oral argument for two reasons. First, even if Marin's case were severed, the obstruction of justice evidence relating Napout might still be admissible as evidence relevant to proving the RICO conspiracy in which he and his co-Defendants are charged. Second, as discussed, the Court does not find any risk of improper spillover or jury confusion for Marin with respect to this evidence, even if introduced only Rule 404(b) evidence as to Napout, especially in light of the limiting instruction the Court would give the jury with respect to that evidence.

the potential for unfair prejudice to the defendant, *i.e.*, whether the evidence "involve[s] conduct any more sensational or disturbing than the crime[] with which [the defendant has been] charged." *United States v. Lyle*, 856 F.3d 191, 207 (2d Cir. 2017) (citation and quoting omitted); *see also U.S. v. Coppola*, 671 F.3d 220, 245-46 (2d Cir. 2012) (upholding district court's admission of evidence that defendant's co-conspirators committed extortion of businesses, because the evidence was "not 'especially worse or [more] shocking'" than the extortion and wire fraud sub-predicates of defendant's RICO charge (quotation omitted)).

In this case, the Court finds that there is little risk of prejudice related to the obstruction of justice allegedly committed by Witnesses 1, 2, and 3, given the similar nature of the co-conspirators' alleged obstructive conduct and the crimes with which Defendants are charged. The alleged forms of obstruction of justice—including warnings not to speak with police, shredded documents, sham contracts, and the removal of electronic devices—are not any more "sensational or disturbing" than the alleged bribery scheme with which Defendants are charged, which spanned decades, involved one of the world's preeminent sports organizations, and resulted in vast amounts of money being paid as bribes and kickbacks. Although Marin argues that tampering with witnesses and evidence, and attempting to impede and interfere with law enforcement investigations, is more serious than the crimes with which Defendants have been charged, the actual forms of obstruction allegedly employed here are, in fact, no more serious, "sensational", or "disturbing" than Defendants' alleged crimes. Indeed, these acts of obstruction are really no different than Defendants' alleged acts of bribery, wire fraud, and money laundering: they all involve non-violent acts of dishonesty, deceit, and concealment. The fact that they were allegedly directed at a different audience, *i.e.*, law enforcement, does not make them any more serious or prejudicial for purposes of a Rule 403 analysis.

Accordingly, the Court finds that admission of the proffered obstruction of justice evidence will not unfairly prejudice Defendants and that, in any event, any prejudice does not substantially outweigh the probative value of this evidence. *United States v. Diaz*, 176 F.3d 52, 80 (2d Cir. 1999).

## CONCLUSION

For all of the foregoing reasons, the Court finds that the obstruction of justice evidence described by the government in its motion *in limine* is admissible as evidence of the existence of the charged RICO conspiracy and also, with respect to Napout's alleged obstruction of justice, as Rule 404(b) evidence as to him. The Court defers until trial ruling on the government's request to admit this evidence as proof of predicate acts.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 17, 2017
      Brooklyn, New York