UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

- against -

JUAN ANGEL NAPOUT, *et al.,*

                      Defendants.
-------------------------------------------------------X

*SEALED* MEMORANDUM & ORDER GRANTING GOVERNMENT'S MOTION FOR A PARTIALLY ANONYMOUS AND SEMI-SEQUESTERED JURY

15-CR-252 (PKC)

PAMELA K. CHEN, United States District Judge:

The government has moved *in limine* for a partially anonymous and semi-sequestered jury for the trial of Defendants Jose Maria Marin, Juan Angel Napout, and Manuel Burga, scheduled to begin on November 6, 2017. (*See* Gov. Motion *in Limine*, Dkt. 652 at 1.) Defendants oppose the government's motion. Oral argument on the motion was held on October 10, 2017. For the reasons set forth herein, the Court finds that a partially anonymous and semi-sequestered jury is warranted and grants the government's motion.[1]

## BACKGROUND

In its motion, the government describes the need for a partially anonymous and semi-sequestered jury. (Dkt. 652 at 11-12, 15-16.) The government emphasizes the widespread media coverage before, during, and after the unsealing of the indictments. The motion includes a list of stories from outlets all over the world, including the United States, Latin America, and Europe. (Dkt. 652 at 6, 12.) The government further notes that the press has published sensitive personal information about defendants and perceived witnesses. (*Id.* at 7, 13.) The ongoing press coverage has generated enormous public interest in the case. The government explains that there have been

---

[1] Because the Court recounts information provided in the government's sealed submission and to avoid tainting the potential jury pool, the Court files this Memorandum & Order under seal.

numerous instances of witness intimidation and harassment, as detailed in the sealed supplement filed alongside its motion. (Sealed Supplement, Dkt. 653.)

Marin, Napout, and Burga each have filed a response to the government's motion. Marin argues that the government's concerns about the media do not warrant an anonymous or semi-sequestered jury, pointing to the absence of any real threat to the jury and the government's role in generating media attention. (Def. Marin Memorandum in Opp'n, Dkt. 662 at 1, 5.) Napout similarly argues that in the absence of a threat of physical violence, jurors should not be made anonymous or sequestered; publicity alone is not reason enough for a judge to take protective measures. (Def. Napout Memorandum in Opp'n, Dkt. 664 at 1.) Napout also argues that the government cannot show any risk of witness or jury tampering by Napout or anyone on his behalf. (*Id.* at 1-2.) Burga joins the arguments of Marin and Napout, and adds that juror anonymity and sequestration are uncommon acts that "represent the exception, not the rule." (Def. Burga Memorandum in Opp'n, Dkt. 665 at 2.) All Defendants argue that the jurors' anonymity and daily protection by the United States Marshals ("Marshals") will cause the jurors to believe that they are at risk of harm by Defendants and would thus prejudice Defendants at trial.

## DISCUSSION

### I. The Government Has Established the Need for a Partially Anonymous Jury

The government has requested that the jury be partially anonymous. Under the government's proposal, the jurors' names would be available to the parties and their attorneys, but not to the public. The Court agrees that this measure is warranted based on both privacy and safety grounds.

District courts have discretion to decide if a jury should be anonymous. *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991) ("[T]he decision whether or not to empanel an

anonymous jury is left to the district court's discretion."). The Court must follow a two-step process to determine whether to empanel an anonymous jury. First, the court must assess whether there is "strong reason to believe that the jury needs protection." *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012) (citation omitted). Courts have considered factors such as (1) the amount of media attention associated with the trial; (2) whether the defendants have access to the means to interfere with the jury; and (3) the dangerousness of the defendants. *See United States v. Wilson*, 493 F. Supp. 2d 397, 398 (E.D.N.Y. 2006) (citation omitted). Second, if the court determines that anonymity is necessary to protect the jury, the court should then take "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *Pica*, 692 F.3d at 88 (internal quotation marks omitted).

In this case, the Court finds that both factors are met. First, there is "strong reason" for the jury to be protected. *Id.* at 88. The Court is very concerned that the overwhelming amount of media attention, including from the foreign press, will invade the privacy of jurors, and that this situation presents a substantial risk of the jurors being intimidated, influenced, and tainted by contacts from both the press and the public, as well as by the receipt of improper information. The Court agrees with the government's contention that the media attention devoted to this case has been intense and will only increase during jury selection and trial. (Dkt. 652 at 6.) Press reporting has revealed personal information about potential witnesses, including their current addresses and whereabouts. Media attention has also caused significant public interest in this case, which can lead to safety concerns for the jurors and their families. *United States v. Vario*, 943 F.2d 236, 240 (2d Cir. 1991) (explaining that pretrial publicity can support the need for an anonymous jury because it can expose jurors "to intimidation by defendants' friends or enemies, or harassment by the public") (quotations omitted).

The Court also grants the government's request for partial anonymity on safety grounds. Based on the information set forth in the government's sealed supplement, the Court finds that there is a genuine risk of threats and physical harm to the jurors and their families that warrants anonymity in this case. (Dkt. 653.) The government's submission recounts disturbing instances of defendants and potential witnesses: being followed by the media during the person's daily routine, including taking his children to school (*id*. at 1-2); having photographs of the person's home displayed in the news (*id*. at 2-3); receiving anonymous death threats, including a witness receiving a voicemail message threatening to kill him/her if he/she "talked" (*id*. at 5-6); finding the family dog dead, with its throat slashed, in the yard of the person's home (*id*. at 5); being threatened with financial extortion to prevent the witness from cooperating with the government (*id*. at 6); and having the person's business office burglarized soon after meeting with the government (*id*.) The Court is within its discretion to rely on the government's proffer of evidence to show that a jury needs protection, and does so here. *See United States v. Persico*, No. 10-CR-147 (SLT), 2012 WL 1188243 at *4 (E.D.N.Y. Apr. 6, 2012) (citing *United States v. Wong*, 40 F.3d 1347, 1376–77 (2d Cir.1994)); *United States v. Mayes*, No. 12-CR-385 (ARR), 2013 WL 6175824, at *2-3 (E.D.N.Y. Nov. 25, 2013) (empaneling anonymous and semi-sequestered jury based in part on "extensive-pretrial publicity" and the government's proffer of obstructive conduct even though "the defendants are not charged in the indictment with witness tampering, jury tampering, or obstruction of justice.").[2]

---

[2] In considering the government's proffer of evidence, the Court recognizes that there is no evidence that Defendants were responsible for, or involved in, these acts of threats or violence. However, the Court has a duty to protect the jurors from harm, regardless of the source, when, as here, the threats and violence have a clear connection and are directed to preventing the investigation and/or prosecution of one of the crimes for which the defendants are on trial, *e.g.*, RICO conspiracy.

Second, the Court is prepared to take "reasonable precautions" to minimize any prejudicial effects on Defendants. As the Court explained at the oral argument, the Court will inform the jurors that they will remain anonymous to the public throughout the trial in order to protect their privacy and prevent unwanted and inappropriate contact with the jurors by the media and general public. As discussed *infra*, the Court finds that this instruction will minimize any potential prejudice to Defendants from the jurors speculating that Defendants pose a threat to their safety.

## II. The Government Has Established the Need for a Semi-Sequestered Jury

The government has also requested that the jury should be semi-sequestered. Under the government's proposal, the jury will be escorted into and out of the courthouse each day by the Marshals and transported to a central location or locations from which they will go to and from their homes. The jury will also be sequestered during all breaks in the trial, including lunch.[3] Again, the Court finds that these measures are warranted based on both privacy and safety grounds.

A court's decision to sequester a jury often accompanies the decision to make a jury anonymous. *United States v. Rivera*, No. 13-CR-149 (KAM), 2015 WL 630242, at *8 (E.D.N.Y. Feb. 13, 2015) ("the same reasons that warrant the use of an anonymous jury also warrant partial sequestration of the jury") (citation omitted). Sequestering a jury is an appropriate protective measure when a trial is of great magnitude and subject to regular media attention. *See Paccione*, 949 F.2d at 1193 (stating that anonymity and semi-sequestration were appropriate because the "case had been front-page news and that the trial could be expected to be the subject of extensive publicity, exposing the jurors to inappropriate contacts that could compromise the trial.").

---

[3] As discussed below, though the government does not specifically request this measure, the court finds it to be a necessary aspect of the proposed semi-sequestration of the jury.

Here, semi-sequestration will prevent members of the media and the general public from following jurors as they enter and leave the courthouse, thereby serving to protect the jurors from inappropriate and potentially harassing or intimidating contact and from receiving information that is not in the record. *See United States v. Gotti*, No. S8 02-CR-743 (RCC), 2004 WL 2274712, at *3 (S.D.N.Y. Oct. 7, 2004) (granting semi-sequestration and explaining that is "strong reason to believe that the likely media attention to the trial will potentially expose the jurors to harassment and intimidation."); *United States v. Wiley*, 846 F.2d 150, 157 (2d Cir.1988) ("[E]xtra-record information that comes to the attention of a juror is presumptively prejudicial."). This measure is also necessary to ensure the jurors' physical safety. Sequestering the jurors during the trial day serves the same purposes. Although the government's motion is silent on this issue, the Court finds that this measure is also necessary to protect them from invasions of their privacy and inappropriate contact by members of the media and general public, as well as to protect their physical safety.[4] Indeed, the effectiveness of partial anonymity would be substantially undercut without the accompanying measure of semi-sequestration. *See Rivera*, 2015 WL 630242 at *8. Thus, the Court grants the government's request for semi-sequestration of the jury.

## III. The Risk of Prejudice to Defendants is Minimal

In opposing the government's motion, Defendants argue that they will be severely prejudiced by the proposed measures, because these measures will cause the juror to conclude that

---

[4] The Court need look no further than a recent trial in this courthouse to be convinced of the perils of not sequestering the jurors while they are in the courthouse. During that trial, in *United States v. Al Farekh*, No. 15-CR-268 (BMC), the defendant's father encountered several members of the non-sequestered jury in a courthouse elevator and engaged in inappropriate conversations with them, which resulted in four jurors having to be excused and the case being decided by a jury of only eleven jurors. *See* 15-CR-268, Dkt. 174. Indeed, contrary to impinging on Defendants' right to a fair trial, semi-sequestration of the jurors is necessary to protect that right by preventing inappropriate contacts with, and influence on, the jury by members of the public.

6

they are at risk of physical harm from Defendants and thus will be more disposed to convicting them.[5] The Court disagrees, and finds that the risk of prejudice to Defendants from the proposed partial anonymity and semi-sequestration is minimal.

As discussed, the Court will tell the jurors that these measures are designed to protect their privacy, to prevent unwanted contact by members of the media and the public, and to ensure that the trial can proceed without interference from the media or public. Courts have routinely given similar explanations in cases involving protective measures such as semi-sequestration. *See United States v. Galestro*, No. 06-CR-285 (ARR), 2008 WL 2783359, at *3, n.3 (E.D.N.Y. July 15, 2008) ("Jurors are generally told that such steps are not unusual and are taken to ensure their privacy and impartiality in light of the media and public attention the trial is expected to receive.").

Defendants argue that this instruction will not be enough to prevent or mitigate the prejudice to them, and that, despite this instruction, the jurors will conclude that they are being escorted every day by the Marshals because Defendants present a risk of harm to them. The Court finds that this concern is both speculative and overstated. Given the likely presence of both the media and the general public in large numbers during the trial, it is unlikely that the jurors will doubt the explanation given to them by the Court regarding the reason—which is accurate—for their semi-sequestration. In addition, the jurors will be advised that their identities are being disclosed to the parties and counsel, but not to the public, which further undercuts any suggestion to the jurors that they are being protected from Defendants in this case. Finally, the non-violent nature of the charges that Defendants face and the type of evidence that the jury will hear at trial,

---

[5] Defendants appear to be divided on whether the prejudice will result solely from semi-sequestration, *i.e.*, the jurors being escorted every day by the Marshals, or from the combination of partial anonymity and semi-sequestration. At oral argument, counsel for Marin and Burga, in fact, indicated that they do not necessarily oppose the proposed partial anonymity of the jurors.

none of which involves violence or threats of harm by Defendants, will also counteract any notion that the jurors have reason to fear Defendants.

In sum, the Court finds that the empanelment of a partially anonymous and semi-sequestered jury is warranted by the history and circumstances of this case and that it will not result in prejudice to Defendants. Rather, the Court finds these measures are necessary to ensure that Defendants receive a fair and expeditious trial.

## CONCLUSION

For the foregoing reasons, the Court orders that the jury empaneled in this matter will be partially anonymous, *i.e.*, the jurors' names will not be disclosed to public, and that the jury will be semi-sequestered during the duration of the trial, *i.e.*, the jurors will be escorted to and from the courthouse each day by United States Marshals and they will be sequestered while in the courthouse during the trial.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 17, 2017
      Brooklyn, New York