UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,

- against -

JUAN ANGEL NAPOUT, *et al.*,

Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**
**REGARDING MOTIONS *IN LIMINE***
**(Dkts. 732, 786)**
15-CR-252 (PKC)

PAMELA K. CHEN, United States District Judge:

Opening arguments in the trial against Defendants Juan Angel Napout, Jose Maria Marin, and Manuel Burga ("Defendants") are scheduled to begin on November 13, 2017.[1] Three motions *in limine* are pending before the Court: (1) Marin's motion in *limine* to preclude a government expert, Dr. Stefan Szymanski, from offering any opinion testimony concerning the economic effects of corruption (Dkt. 732); (2) Napout's motion *in limine* to preclude the government from using at trial certain documents allegedly protected from disclosure by the work product doctrine (Dkt. 786; Hr'g Tr., Nov. 9, 2017); and (3) the government's motion *in limine* to preclude Defendants' counsel from stating or eliciting certain information during cross-examination of cooperating witnesses (Dkt. 777; *see also* Dkt. 752). For the reasons stated below, the Court denies Marin's and Napout's motions and defers ruling on the government's motion pending an *ex parte* hearing with the government on November 13, 2017, at 5:30 p.m., to further assess the basis on which the government seeks to limit cross-examination.

---

[1] The Court presumes the parties' familiarity with the underlying facts of this action, which are set forth in the operative indictment (Dkt. 604, S-2) and the Court's prior decisions in this action, *see, e.g.*, *United States v. Hawit*, 2017 WL 663542 (E.D.N.Y. Feb. 17, 2017).

## I. Marin's Motion to Preclude Expert Testimony

On September 8, 2017, the government provided notice, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), of expert witnesses it intends to call in its case in chief at trial (the "Disclosure"). The Disclosure states that Dr. Stefan Szymanski, currently a professor of sports management at the University of Michigan, is expected to testify about "the history, development, and economics of sports marketing in the context of international soccer." *Id.* at 2. Defendants do not seek to preclude Dr. Szymanski from testifying on those subjects. The Disclosure also states, however, that Dr. Szymanski will testify about "the economic effects of corruption on a media rights holder's ability to generate revenue from the sale of media rights." *Id.* Defendant Marin objects to this latter testimony.

Marin argues that Dr. Szymanski's testimony about "the economic effects of corruption" must be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because the Disclosure fails to explain "how Dr. Szymanski's knowledge and experience allows him to testify about the connection between 'corruption' and the prospects of a media company to earn money." (Dkt. 732 at ECF[2] 2.) Marin emphasizes that "[n]owhere in the Disclosure is there any suggestion that Dr. Szymanski actually examined market information concerning the finances of FIFA, CONMEBOL[,] or any national soccer federation." (*Id.*) Marin argues that, "[w]ithout such an analysis, there are not 'sufficient facts or data' to support an opinion under Rule 702(b)." (*Id.*)

The government argues, in response, that Dr. Szymanski will testify in general terms about "the harms caused to soccer organizations if their officials receive secret bribes or kickbacks in connection with the sale of the organizations' media and marketing rights." (Dkt. 767 at 30.) The

---

[2] "ECF" refers to the pagination generated by the Court's CM/ECF system, and not the document's internal pagination.

government stresses that Dr. Szymanski "will not opine on the particular contracts or tournaments at issue in this . . . case, but rather will explain that, based upon his knowledge of the market for such rights and related economic theory, gained through his education [and experience], these bribes or kickbacks reduce the amount of money that the organizations could have received for the rights by at least the amount of the illicit payments and also depress the market for the sale of media and marketing rights by preventing open and transparent competition among bidders." (*Id.* at 30-31.)[3]

Under Federal Rule of Evidence 702 and *Daubert*, the Court must make a "common sense inquiry into whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir. 1993) (internal quotation marks omitted). If the jury could benefit from such testimony, the Court must act as a "gatekeeper" by ensuring the proffered testimony is "reliable." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Daubert*, 509 U.S. at 597). To make this reliability determination, the Court must conduct a "rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d Cir. 2002).

As an initial matter, the Court finds that Dr. Szymanski's proposed testimony is highly probative on the issue of materiality, *i.e.*, "how an official's receipt of illicit bribes harms a victim"

---

[3] In particular, Dr. Szymanski is expected to testify that the money used to bribe the officials of an organization represents the amount of money the briber would have been willing to pay the organization absent the bribe, and that such bribes "distort the market by hindering competition." (Govt. Redacted Mem. of Law, Dkt. 766, at 34.)

3

(*id*. at 33), which is an element of wire fraud conspiracy.[4] Contrary to Defendant Marin's objection to this part of Dr. Szymanski's testimony (Dkt. 732), the Court finds that Dr. Szymanski's extensive educational and professional training and background in the business of international sports—in particular, soccer—along with his well-documented expertise in the economics of international sports qualifies him to testify on these topics. (*See* Dkt. 732-1.) *See United States v. Defreitas*, No. 07-CR-543(DLI)(SMG), 2011 WL 317964, at *6 (E.D.N.Y. Jan. 30, 2011) (admitting experts' testimony on terrorist organizations and their operations, and explaining that where "the proposed expert testimony is not of a technical nature, but rather falls within the ambit of social science . . . [a][c]ourt's task is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" (quoting *United States v. Paracha*, No. 03-CR-1197, 2006 WL 12768, at *19 (S.D.N.Y. Jan. 3, 2006)) (internal quotation marks omitted)); *see also United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011) (noting that "district courts enjoy considerable discretion in deciding on the admissibility of expert testimony"). That Dr. Szymanski's testimony may not be based on empirical data goes to its weight—and is properly the subject of cross-examination—and not its admissibility under *Daubert*. *See, e.g.*, *United States v. Morgan*, 675 F. App'x 53, 55 (2d Cir. 2017) (summary order) ("[A] judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions. . . . [V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (internal quotation marks and citations omitted)).

---

[4] Although Burga is only being tried on the RICO conspiracy charge, because the predicate wire fraud conspiracies must be proven as part of the proof of the RICO conspiracy, this evidence is relevant to the charges against all three Defendants.

Rather, Dr. Szymanski's research and scholarship regarding the market for international sports media and marketing rights (Dkt. 732-1 at 2-10) provide sufficient support for his proffered expert opinions. Finally, the Court finds that Defendants will suffer no unfair prejudice from the admission of this part of Dr. Szymanski's testimony, especially given that he will not testify about any of the facts of this case.

II.     **Napout's Motion to Suppress Work Product**





"The attorney work product doctrine, now codified in part in . . . Rule 16(b)(2) of the Federal Rules of Criminal Procedure, provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas*, 318 F.3d 379, 383 (2003). The law is clear, however, that a document does not gain work product status merely because it was sent to an attorney. *Id.* at 384-85. "[T]he principle underlying the work product doctrine—sheltering the mental processes of an attorney as reflected in documents prepared for litigation—is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents." *Id.*

[redacted]

Here, Napout has not made the requisite showing of a "real, rather than speculative, concern" that his counsel's "thought processes" have been or will be revealed ████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

■ ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████

9



In sum, the Court denies Napout's motion to suppress 

### III. The Government's Motion to Limit Cross-examination

Citing a concern for the safety of witnesses and their families, the government moves to preclude defense counsel from stating or eliciting the names, titles, or personal identifying information of certain individuals during cross-examination of government witnesses. (Dkts. 752, 777.)[13] Defendants oppose the government's motion to limit cross-examination, arguing that their Sixth Amendment right to present a defense would be hampered if they are precluded from using the names and titles at issue. (Dkts. 760, 772, 774, 778-1.) On November 9, 2017, the Court held an *ex parte* hearing with defense counsel to assess Defendants' claim that their anticipated cross-

---

[13] The government moved initially to limit cross-examination on certain subject matter that, according to the government, would create a risk to witness safety. (Dkt. 752.) After Defendants opposed that motion, the government modified its request to preclude, more narrowly, the names, titles, and personal identifying information of certain witnesses. (*See* Dkt. 777 at 1-2.)

examination of government witnesses will be impaired if they are unable to use the specific names and titles at issue. (Hr'g Tr., Nov. 9, 2017.)[14]

Having heard defense counsel's more particularized arguments at the *ex parte* hearing, the Court will hear further from the government regarding the basis on which the it seeks to limit cross-examination at an *ex parte* hearing in Courtroom 4F North at 5:30 p.m. on November 13, 2017. The Court will issue its ruling on the government's motion in a subsequent hearing with counsel for all parties.

## CONCLUSION

For the reasons stated above, the Court DENIES Marin's motion in *limine* to preclude a government expert, Dr. Stefan Szymanski, from offering any opinion testimony concerning the economic effects of corruption (Dkt. 732); DENIES Napout's motion *in limine* to preclude the government from using at trial certain documents allegedly protected from disclosure by the work product doctrine (Dkt. 786; Hr'g Tr., Nov. 9, 2017); and DEFERS the government's motion *in limine* to preclude Defendants' counsel from stating or eliciting certain information during cross-examination of cooperating witnesses (Dkt. 777; *see also* Dkt. 752). The government may use Government Exhibit 976 as an exhibit at trial. Government trial counsel shall appear in Courtroom 4F North for an *ex parte* hearing at 5:30 p.m. on November 13, 2017. The Court will issue its ruling on the government's motion in a subsequent hearing with counsel for all parties.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 11, 2017
      Brooklyn, New York

---

[14] The hearing was held *ex parte* to protect the confidentiality of Defendants' trial strategy.