UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                   :

UNITED STATES OF AMERICA,              :

                                              :

          vs.                            :  15 Cr. 252 (S-2)(PKC)

                                            :

JUAN ANGEL NAPOUT, et al.          :

                                            :

                 Defendants.      :

                                            :

                                            :
------------------------------------------------------------X

 

## <u>DEFENDANTS' REQUEST TO CHARGE</u>

 

| | |
|---|---|
| **GREENBERG TRAURIG, LLP** | **BRUCE L. UDOLF, P.A.** |
| A. John Pappalardo | Bruce Udolf |
| Elliot H. Scherker | |
| Jacqueline Becerra | *Attorney for Manuel Burga* |
| | |
| **PIÑERA-VAZQUEZ LAW FIRM** | **BALLARD SPAHR LLP** |
| Silvia B. Piñera-Vazquez | Charles A. Stillman |
| | James A. Mitchell |
| *Attorneys Juan Ángel Napout* | Bradley R. Gershel |
| | |
| | *Attorneys for Jose Maria Marin* |

1

I.     STANDARD INSTRUCTIONS

On October 11, 2017, the Court filed its standard instructions [ECF No. 700]. In regard to these instructions, Defendants Juan Ángel Napout, Manuel Burga, and Jose Maria Marin ("Defendants") request that the Court charge the jury in its usual manner.

II.     ADDITIONAL GENERAL INSTRUCTIONS

A.     Deliberate Ignorance

The government may prove that a defendant acted "knowingly" by proving, beyond a reasonable doubt, that this defendant deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. A finding beyond a reasonable doubt of an intent of a defendant to avoid knowledge or enlightenment would permit the jury to find knowledge. Stated another way, a person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.

It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from any such evidence.

You may not conclude that a defendant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

> Source:  1A Fed. Jury Prac. & Instr. § 17:09 (6th ed.); *United States v. Nektalov*, 461 F.3d 309, 313-16 (2d Cir. 2006); *but see Nektalov*, 461 F.3d at 316 ("A conscious avoidance instruction is not appropriate where the only evidence alerting a defendant to the high probability of criminal activity is direct evidence of the illegality itself—that is, when the evidence is that the defendant had either actual knowledge or no knowledge at all of the facts in question.").

B.     Consciousness of Guilt from False Exculpatory Statement

You have heard testimony that a defendant made certain statements outside the courtroom to law enforcement authorities in which he claimed that his conduct was consistent

2

with innocence and not with guilt. The government claims that these statements in which he exonerated or exculpated himself are false.

If you find that a defendant gave a false statement in order to divert suspicion from himself, you may, but are not required to infer that a defendant believed that he was guilty. You may not, however, infer on the basis of this alone, that a defendant is, in fact, guilty of the crime for which he is charged.

Whether the evidence as to a defendant's statements shows that he believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

Source: 1-6 Modern Federal Jury Instructions-Criminal P 6.05 (2017); *United States v. DiStefano*, 555 F.2d 1094 (2d Cir. 1977); *United States v. Johnson*, 513 F.2d 819 (2d Cir. 1975).

III.      SUBSTANTIVE LAW

Defendants respectfully request that the Court include the following instructions as to the specific charges in the case:

REQUEST NO. 1

CERTAIN LEGAL PRINCIPLES

I will now instruct you as to the legal elements of the crimes charged. I will first instruct you on certain legal principles you will be called upon to apply when considering the elements of the crimes charged in this case.  Following those instructions, I will then explain the elements of the crimes charged in the Indictment.

3

1.     <u>Knowingly and Intentionally</u>

Because the Indictment charges seven separate counts, and because all of the charges implicate the concepts of knowledge and intent, I will now address these concepts before addressing the charges specifically.

a.     <u>Knowingly</u>

Certain allegations in the Indictment require that in order to sustain its burden of proof, the government must prove beyond a reasonable doubt that a defendant acted "knowingly." A defendant acts knowingly if he acts purposely and voluntarily, and not because of ignorance, mistake, accident, carelessness, or other innocent reason.  Whether a defendant acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.

b.     <u>Intentionally</u>

Certain allegations in the Indictment require that in order to sustain its burden of proof, the government must prove that a defendant acted "intentionally."  Before you can find that a defendant acted intentionally, you must be satisfied beyond a reasonable doubt that a defendant acted deliberately and purposefully.  That is, a defendant's acts must have been the product of his conscious, objective decision, rather than the product of mistake or accident. A defendant need not have been aware of the specific law or rule that his conduct may have violated.

These issues of knowledge and intent require you to make a determination about a Defendant's state of mind, something that rarely can be proved directly. A wise and careful consideration of all the circumstances of the case may, however, permit you to make such a determination as to Defendants' state of mind.  Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from his or her words and actions in a particular circumstance. You are asked to do the same here.

2.      Conspiracy

The Indictment alleges that Defendants, in separate acts, conspired to violate several different federal laws.  First, I will instruct you on the elements of conspiracy under federal law. Later, I will give you instructions on the laws the Indictment charges that Defendants conspired to violate.

a.      Conspiracy Generally

A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose. It is sometimes referred to as a criminal partnership. You should understand that a conspiracy is an offense separate from the commission of any offense that may have been committed pursuant to the conspiracy.  That is because the formation of a conspiracy, of a partnership for criminal purposes, is in and of itself a crime. Thus, if a conspiracy exists, even if it should fail in achieving its purpose, it is still punishable as a crime. The essence of the charge of conspiracy is an understanding or agreement between or among two or more persons that they will act together to accomplish a common objective that they know is unlawful.

The United States Congress has deemed it appropriate to make conspiracy a separate crime, even if the conspiracy did not succeed.  That is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

b.      Federal Law

I will now instruct you on the federal law of conspiracy. In one or more counts of the Indictment, the government has charged Defendants Napout, Burga and Marin with conspiracies under federal law.

The following are the elements of the federal crime of conspiracy, each of which the government must prove beyond a reasonable doubt:

First:   two or more persons entered into a particular unlawful agreement charged in the conspiracy count or racketeering act that you are considering; and

Second:   it must be proved that a defendant knowingly and intentionally became a member of the conspiracy.

(1)   First Element

The first element requires that the government prove that the minds of at least two of the alleged conspirators met in an understanding, and that they agreed to work together to accomplish the object of the charged conspiracy.

A conspiracy is an agreement between or among two or more persons to accomplish an unlawful purpose. While conspiracy involves an agreement to violate the law, the government need not prove that the person charged entered into an express or formal agreement, or that he stated, orally or in writing, what the scheme was, or how it was to be accomplished. It is sufficient to show that he came to a mutual understanding with another person or other persons to bring about an unlawful act. You may, if you choose, infer such an agreement—or conspiracy—from the circumstances and conduct of the parties.

Put another way, to establish a conspiracy, the government is not required to prove that the conspirators sat around a table and entered into a solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the unlawful project is to be carried out, or the part to be played by each conspirator. It would be extraordinary if there were such a formal document or specific oral agreement. Common sense would suggest that when people do, in fact, undertake to enter into a conspiracy, much is left to an unexpressed understanding. A conspiracy, by its very nature, is almost

6

invariably secret in both origin and execution.  Therefore, it is sufficient for the government to show that the conspirators somehow came to a mutual understanding to accomplish an unlawful act by means of a joint plan or common scheme.

Moreover, since a conspiracy is—by its very nature—characterized by secrecy, you may infer its existence from the circumstances of the case and the conduct of the parties involved. You may consider the actions and statements of all of these persons as proof that a common design existed on the part of the parties charged to act together for the accomplishment of an unlawful purpose. In short, you may consider all the evidence before you, and the reasonable inferences that may or may not be drawn from all this evidence.

(2)    <u>Second Element</u>

The second element requires that, if you find a conspiracy existed, you must determine whether a defendant was a member of that conspiracy. That is, you must determine whether a defendant knowingly and willfully became a participant in the conspiracy.

I have already instructed you as to the term "knowingly." A person acts "willfully" if he participates voluntarily and intentionally; that is, with a bad purpose to do something the law forbids—in other words, with a bad purpose either to disobey or disregard the law. You should give the word "voluntarily" its common meaning.

In deciding whether a defendant was a participant in or member of a conspiracy, you must consider whether, based upon all of the evidence, a defendant knowingly and willfully joined that conspiracy: that is, whether he participated in it with knowledge of its unlawful purpose and with the specific intention of furthering one or more of its objectives. Proof of a financial interest in the outcome of a scheme is not essential.

A defendant's knowledge is a matter of inference from the facts proved. To become a member of the conspiracy, a defendant need not have known the identities of every member, nor need he have been apprised of all of their activities.  Moreover, a defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his or her part.

Furthermore, the extent or duration of a defendant's participation does not necessarily bear on the issue of a defendant's guilt.  For example, it is not required that a person be a member of the conspiracy from its very start. In other words, the law does not require a defendant to play an equal role in the conspiracy. Each member may perform separate and distinct acts and may perform them at different times. Some conspirators may play major roles, while others may play minor ones. Even a single act may be sufficient to draw a defendant within the circle of a conspiracy.  A person who willfully joins an existing conspiracy is charged with the same responsibility as if he had been one of the originators or instigators of the conspiracy.

Thus, if you find that the conspiracy existed, and if you further find that a defendant participated in it knowingly and willfully, the extent or degree of his participation is not material. The government also need not prove that a defendant actually committed the unlawful act or acts charged as the objective of the conspiracy. Instead, the government must prove beyond a reasonable doubt only that the purpose of the conspiracy was to commit an unlawful act or acts.

I want to caution you, however, that a defendant's mere presence at the scene of criminal activities, or at locations frequented by criminals, does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make a defendant a member.  A person may know or be friendly with a criminal

8

without being a criminal himself.  Indeed, a person may be a criminal without being a member of the charged conspiracy.  Mere similarity of conduct or the fact that individuals may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I further caution you that mere knowledge or acquiescence without participation in the unlawful plan is not sufficient.  The fact that the acts of a defendant merely happen to further the purposes or objectives of the conspiracy, without his knowledge, does not make that defendant a member.  More is required under the law.  What is necessary is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

Thus, while someone who is present during a conspiracy is not necessarily a member, I further instruct you that you may find that a defendant knowingly and willfully became and was a member of a conspiracy if you find that his presence was purposeful—that is, a defendant's presence on one or more occasions was intended to serve the purposes of the conspiracy.

In sum, the government must prove that a defendant, with an understanding of the unlawful character of the conspiracy, intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking. A defendant thereby becomes a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

    c.      <u>Co-Conspirator Statements and Liability</u>

Some of the charges against the defendants allege that they participated in conspiracies. In that regard, I admitted into evidence against each defendant the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial.

The reason for allowing this evidence to be received against each defendant has to do with the nature of the crime of conspiracy.  As I mentioned earlier, a conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy, and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

Thus, if you find beyond a reasonable doubt that a defendant was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy at the time those acts were committed or statements were made may be considered against that defendant. This is so even if such acts were done and statements were made in a defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence of, and in furtherance of, the unlawful scheme.  If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, they may not be considered by you as evidence against a defendant. Moreover, if the statement was made by a cooperating witness, this statement may only be considered as context for other co-conspirator statements, and not for the truth of that particular statement.

d.     Aiding and Abetting

The Indictment alleges that the defendants aided and abetted the commission of particular crimes and racketeering acts.  I will instruct you on the law of aiding and abetting before addressing the specific crimes charged in the Indictment.

The federal aiding and abetting statute provides as follows:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Accordingly, if you find that a defendant you are considering knowingly and willfully aided and abetted another person in the commission of a crime, he is as guilty as if he personally committed it. Before you can convict a defendant on the ground that he aided and abetted the commission of the crimes charged, however, you must first find that another person committed that crime.  No one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place.  But if you do find that a crime was committed, then you must determine whether a defendant you are considering aided or abetted the commission of that crime.

In order for a defendant to be found guilty of aiding and abetting, the government must prove that a defendant willfully and knowingly associated himself with the crime, and that he willfully and knowingly sought by some act to help make the crime succeed. The mere presence of a defendant where a crime is being committed, even when combined with knowledge by a defendant that a crime is being committed, or the mere acquiescence by a defendant in the

criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. An aider and abettor must have some interest in the crime.

Thus, a defendant must have willfully associated himself in some way with the criminal venture and must have willfully participated in it as something he wanted to bring about. That is, a defendant must willfully seek by some act to make the criminal venture succeed.  As I have already instructed you, a person acts willfully if he participates voluntarily and intentionally; that is, with a bad purpose to do something the law forbids. Mere presence or relationship to the person who actually committed the crime, even when coupled with knowledge that a crime was committed, is not enough.

> Source: *United States v. Ashburn,* 11-CR-303 (NGG), Jury Instructions, dated March 11, 2015 (ECF Dkt. No. 425) (hereafter, "Ashburn Inst."); *United States v. Romanello*, No. 12-CR-691 (JFK), 2014 WL 69794, at *1 (E.D.N.Y. Jan. 8, 2014).

REQUEST NO. 2

COUNT ONE: RACKETEERING CONSPIRACY

In Count One, Defendants JUAN ÁNGEL NAPOUT, MANUEL BURGA, and JOSÉ MARIA MARIN are charged with racketeering conspiracy.  I will now instruct you on the law as it pertains to racketeering conspiracy.

In order to prove that a defendant is guilty of the racketeering conspiracy offense charged in Count One, the government must prove each of the following four elements beyond a reasonable doubt:

<table>
<tr><td>First:</td><td>that a defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity;</td></tr>
<tr><td>Second:</td><td>that an enterprise would be established as alleged in the Indictment;</td></tr>
<tr><td>Third:</td><td>that the enterprise would be engaged in, or its activities would affect, interstate or foreign commerce; and</td></tr>
<tr><td>Fourth:</td><td>that a defendant would be employed by, or associated with, the enterprise.</td></tr>
</table>

The Enterprise

The term enterprise as used in these instructions may include a group of people associated in fact, even though its association is not recognized as a legal entity.  Thus, an enterprise need not be a formal business entity such as a corporation, but may be merely an informal association of individuals.  A group or association of people can be an enterprise if these individuals have associated together for a common purpose of engaging in a course of conduct.

Such an association of persons may be established by evidence showing an ongoing association, formal or informal, and by evidence that the people making up the association functioned as a continuing unit.  Therefore, in order to establish the existence of an enterprise, the government must prove:  First, that there is an ongoing organization with some sort of framework for making or carrying out decisions; second, that the various members and associates of the association function as a continuing unit to achieve a common purpose; and third, that the enterprise is separate and apart from the pattern of activity in which it engages, in other words, it has a separate existence from the pattern of racketeering acts. Regarding organization, it is not necessary that the enterprise have any particular or formal structure, but it must have sufficient organization that its members functioned and operated in a coordinated manner in order to carry out the alleged common purpose for purposes of the enterprise.

Separate existence means that the enterprise has an existence beyond that which is necessary merely to commit each of the charged racketeering acts; that is, that the organization continued to exist in the intervals between the alleged racketeering activities. It is not necessary, however, to find that the enterprise had some function totally unrelated to the racketeering activity.  Common sense dictates that the existence of an association-in-fact enterprise is oftentimes more readily proven by what it does than by an abstract analysis of its structure. Moreover, you may consider proof of the racketeering acts to determine whether the evidence establishes the existence of the charged enterprise. Thus, evidence of the function of overseeing and coordinating the commission of several different predicate racketeering acts and other activities on an ongoing basis may satisfy the separate existence of the enterprise requirement.

The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated.

Interstate Commerce

The second element is engaging in or the effect on interstate or foreign commerce.  As I stated previously, the government must prove beyond a reasonable doubt that the RICO enterprise engaged in or its activities affected interstate or foreign commerce.  Interstate commerce means trade or conducting business or travel between one state and another state or the District of Columbia; and foreign commerce means such trade, business, or travel between the United States and another country.  Therefore, interstate and foreign commerce may include the movement of money, goods, services, or persons from one state to another or the District of Columbia, or between the United States and another country.  This may include, among other matters, the purchase or sale of goods or supplies from outside the United States or the state in which the enterprise is located, the use of interstate and international mail or wire facilities, or the causing of any of those things.

An enterprise is generally engaged in commerce when it is itself directly engaged in the production, distribution, or acquisition of goods or services in holds a position in the enterprise, or has ownership interest in the enterprise.

Employed By or Associated With the Enterprise

The government must also prove beyond a reasonable doubt that a defendant was or would be "employed by"" or associated with" the enterprise.  The government need not prove both; either "employed by" or "associated with" is sufficient to establish this element.  The term "employed by" should be given its common, plain meaning. Thus, a person is "employed by" an

enterprise when, for example, he is on the payroll of the enterprise, performs services for the enterprise, or holds a position in the enterprise.

"Associated with" also should be given its plain meaning. As stated in Webster's Third International Dictionary, 1971 edition, associate means, to join often in a loose relationship as a partner, fellow worker, colleague, friend, companion, or ally to join or connect with one another." Therefore, a person is associated with an enterprise when, for example, he joins with other members of the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise. It is not required that a defendant has been employed by or associated with the enterprise for the entire time the enterprise existed. The government also is not required to prove that a defendant had a formal position in the enterprise or participated in all of the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise. Rather, it is sufficient that the government prove beyond a reasonable doubt that at some time during the existence of the enterprise, as alleged in the indictment, a defendant was employed by or associated with the enterprise within the meaning of those terms I have just explained, that he knew of the general nature of the enterprise, and that the enterprise extended beyond his own role in the enterprise.

As previously mentioned, the agreement to commit a RICO offense is the essential aspect of a RICO conspiracy offense. You may find that a defendant has entered into the requisite agreement to violate RICO when the government has proven beyond a reasonable doubt that a defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. The government is not required to prove that a defendant personally committed two racketeering acts

or that he agreed to personally commit two racketeering acts.  Rather, the government must prove beyond a reasonable doubt that a defendant agree to participate in the enterprise with the knowledge and intent that at least one member of the RICO conspiracy, which could be a defendant himself, would commit at least two predicate racketeering acts in the conduct of the affairs of the enterprise.

In addition, the indictment need not specify the predicate racketeering acts that a defendant agreed would be committed by some member of the conspiracy in the conduct of the affairs of the enterprise. You may consider the evidence presented of racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs to determine whether a defendant agreed that at least one member of the conspiracy would commit two or more racketeering acts.

In order to convict a defendant of the RICO conspiracy offense, your verdict must be unanimous as to which type or types of predicate racketeering activity a defendant agreed would be committed.

Furthermore, to establish the requisite conspiratorial agreement, the government is not required to prove that each co-conspirator explicitly agreed with every other co-conspirator to commit the substantive RICO offense, or knew all of his fellow co-conspirators, or was aware of all of the details of the conspiracy.  Rather, to establish sufficient knowledge, it is only required that a defendant know the general nature and common purpose of the conspiracy, and that the conspiracy extends beyond his individual role. Moreover, the elements of a RICO conspiracy such as the conspiratorial agreement, a defendant's knowledge of it, and a defendant's participation in the conspiracy, may be inferred from circumstantial evidence. For example, when the evidence establishes that a defendant and at least one other conspirator committed

several racketeering acts in furtherance of the charged enterprise's affairs, you may infer the existence of the requisite agreement to commit a RICO offense. However, it is for you to determine whether, based on the entirety of the evidence, the government has proven that a defendant entered into the required conspiratorial agreement.

Furthermore, it is not necessary that the government prove that a particular defendant was a member of the conspiracy from its beginning. Different persons may become members of the conspiracy at different times.

If you find there is a conspiracy, you may consider the acts and statements of any other member of the conspiracy during and in furtherance of the conspiracy as evidence against a defendant whom you have found to be a member of it. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator during the existence of and in furtherance of the conspiracy is considered the act or statement of all the other conspirators, and is evidence against them all. Moreover, a defendant may be convicted as a conspirator even though he plays a minor role in the conspiracy, provided that you find beyond a reasonable doubt that the conspiracy existed and that a defendant knowingly participated in the conspiracy with the intent to assist other conspirators in accomplishing its objective or objectives.

Conduct or Participate in the Conduct of the Affairs of the Enterprise

To convict a defendant of the RICO conspiracy offense charged in Count One, the government is not required to prove that a defendant personally participated in the operation or management of the enterprise. Rather, a defendant may be convicted of a RICO conspiracy offense even if he did not personally participate in the operation or management of the enterprise when the evidence establishes that a defendant knowingly agreed to facilitate a scheme which, if

18

completed, would constitute a RICO substantive violation involving at least one conspirator who would participate in the operation or management of the enterprise.

Thus, the government must prove that at least one conspirator participated in the operation and management -- or management of the enterprise itself or that at least one conspirator had some part in directing the enterprise's affairs. Such proof may include evidence of a conspirator intentionally performing acts, functions, or duties which are necessary to or helpful in the operation of the enterprise. However, while you may consider it as evidence, the intentional performing of acts, functions, or duties, which are necessary to or helpful in, the operation of the enterprise is, by itself, not sufficient to prove that a conspirator participated in the operation or management of the enterprise or had some part in directing the enterprise's affairs. You must find additional evidence to conclude beyond a reasonable doubt that a conspirator participated in the operation or management of the enterprise. However, participation in the operation or management of the enterprise does not require one to have exercised significant control over or within the enterprise, or to have a formal position in the enterprise, or to have primary responsibility for the enterprise's affairs. Rather, an enterprise is operated not just by upper management, but also by lower-rung participants in the enterprise who are under the direction of upper management or carry out upper management's orders. The RICO statute is intended to reach all who participate in the conduct of the enterprise, whether they are generals or foot soldiers. An enterprise also might be operated or managed by one who exerts control over the enterprise.

Source: Ashburn Inst.; *United States v. Applins*, 637 F.3d 59 (2d Cir. 2011).

REQUEST NO. 3

RACKETEERING ACTIVITY

As I mentioned, the defendants JUAN ÁNGEL NAPOUT, MANUEL BURGA and JOSÉ

MARIA MARIN and are charged in Count One of the Indictment with Racketeering Conspiracy.

Count One of the Indictment reads as follows:

> In or about and between 1991 and 2015, both dates being
> approximate and inclusive, within the Eastern District of New York
> and elsewhere, the defendants JUAN ÁNGEL NAPOUT,
> MANUEL BURGA, and JOSÉ MARIA MARIN, together with
> others, being persons employed by and associated with the
> enterprise, which engaged in, and the activities of which affected,
> interstate and foreign commerce, did knowingly and intentionally
> conspire to violate Title 18, United States Code, Section 1962(c),
> that is, to conduct and participate, directly and indirectly, in the
> conduct of the affairs of such enterprise through a pattern of
> racketeering activity, as defined in Title 18, United States Code,
> Sections 1961(1) and 1961(5).

> The pattern of racketeering activity through which the defendants
> JUAN ÁNGEL NAPOUT, MANUEL BURGA, and JOSÉ MARIA
> MARIN, together with others, agreed to conduct and participate,
> directly and indirectly, in the conduct of the affairs of the enterprise
> consisted of multiple acts indictable under:

> Title 18, United States Code, Section 1343 (wire fraud, including
> honest-services wire fraud);

> Title 18, United States Code, Sections 1956 (money laundering and
> money laundering conspiracy); and

> Title 18, United States Code, Section 1512 (obstruction of justice
> and obstruction of justice conspiracy).

Each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise, the last of which would occur within 10 years of a prior act of racketeering activity.

You must not find a defendant guilty of the racketeering conspiracy offense charged in Count One unless you find that the government satisfied all of the elements of that charge, including that a defendant ultimately agreed to the commission of at least two racketeering acts. You must be unanimous as to at least two of the same racketeering acts. I will now explain the twelve racketeering acts in more detail.

Source: Applins Inst.

REQUEST NO. 4

WIRE FRAUD

As I mentioned, one of the types of racketeering activity that the government has alleged

that the defendants agreed would be committed is wire fraud.  Title 18, United States Code,

Section 1343 provides that:

> Whoever, having devised or intending to device any scheme or
> artifice to defraud, or for obtaining money or property by means of
> false or fraudulent pretenses, representations, or promises
> transmits or causes to be transmitted by means of wire, radio, or
> television communication in interstate or foreign commerce, any
> writings, signals, pictures or sounds for the purpose of executing
> such scheme or artifice shall be [guilty of a crime].

Under § 1346, honest services fraud is limited only to schemes involving bribes or kickbacks.

These laws were passed by Congress to protect the public against the various fraudulent

schemes that could be devised by individuals through the use of interstate wires.  To establish

this type of racketeering act, the government must prove beyond a reasonable doubt the

following elements:

First, that a defendant knowingly devised or participated in a scheme to defraud FIFA,

CONCACAF, CONMEBOL, or their constituent organizations of their right to the honest

services of their officials by false and fraudulent pretenses, representations, or omissions.

Second, that a defendant did so knowingly and with intent to defraud.

Third, that the misrepresentation or omission was material;

Fourth, that the use of the wires in furtherance of the scheme.

First Element: Scheme or Artifice to Defraud

The first element that the government must prove beyond a reasonable doubt is that the

defendants knowingly devised or participated in a scheme to defraud FIFA, CONCACAF,

CONMEBOL, or their constituent organizations of their right to the honest services of their

22

officials by false and fraudulent pretenses, representations, or omissions. A "scheme" is any plan or course of action formed with the intent to accomplish some purpose. Thus, to find defendants guilty of this offense, you must find that a conspirator was involved in a fraudulent scheme to deprive the victim soccer organization of honest services through bribes or kickbacks.

In this case, the government has alleged that the various soccer organizations, including FIFA, CONCACAF, CONMEBOL, and their constituent organizations, were deprived of their intangible right to the honest services of their officials.   In order to prove this type of racketeering activity, the government must prove beyond a reasonable doubt that a conspirator was involved in a fraudulent scheme to deprive these organizations of honest services through bribes or kickbacks.

Bribery and kickbacks involve the exchange of a thing or things of value for official action by an official, in other words, a quid pro quo (a Latin phrase meaning "this for that" or "these for those"). Bribery and kickbacks also include offers and solicitations of things of value in exchange for official action. Bribery and kickbacks also include the official's acceptance, solicitation, or agreement to accept a thing of value in exchange for official action, regardless of whether or not the payor actually provides the thing of value, and regardless of whether or not the official ultimately performs the official action or intends to do so. When an official solicits, agrees to receive or receives a bribe or kickback for or because of official action, the official has breached his duty of honest and faithful disinterested service.  The term "official act" includes a decision or action on a matter involving the formal exercise of the organization's power akin to awarding a contract or issuing a lawsuit. The term "official act" also includes using one's official position to exert pressure on another official to perform an official act. The term also includes using one's official position to advise to another official, knowing or intending that such advice will form the basis for an official act by another official.

23

The official and the payor need not state the quid pro quo in express terms, otherwise, the law's effect could be frustrated by knowing winks and nods. Rather, the intent to exchange may be implied from the official's words and actions.

Bribery and kickbacks require the intent to effect an exchange of money or other thing of value for official actions, but each payment need not be correlated with a specific official act. If the government establishes the quid pro quo, the specific transactions comprising the illegal scheme need not match up this for that. In other words, the intended exchange in bribery can be "this for these" or "these for these," not just "this for that."  It is enough that the government proves that a particular payment or promise to provide something of value is made in exchange for a commitment to perform official acts to benefit the payor in the future.

<u>Second Element: Participation in Scheme with Intent</u>

The second element that the government must prove is that a defendant devised or participated in the scheme knowingly and with the specific intent to defraud. I have already instructed you on the definition of the term "knowingly." "Intent to defraud" means to act knowingly and with the specific intent to deceive.  The deceit may consist of the concealment of the things of value that an official has solicited or received, or the official's implicit false pretense to the that he remains loyal to the organization's interest. Whether a person acted knowingly and with intent to defraud is a question of fact for you to determine, like any other fact question. The definitions of knowingly and willfully here are the same as the definitions that I gave you earlier.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of wire fraud. A defendant,

however, has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

Third Element:  Materiality

The third element that the government must prove is that the scheme or artifice to defraud involved a material misrepresentation, false statement, false pretense, or concealment of fact. A representation, statement, false pretense, or omission is "material" if it is one that would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision. That means that, if you find a particular statement or representation false, you must determine whether that statement or representation was one that a reasonable person might have considered important in making his or her decision. The same principle applies to fraudulent half-truths or omissions of material facts.

Fourth Element:  Use of the Wires

The third and final element that the government must establish beyond a reasonable doubt is the use of an interstate or international wire communication in furtherance of the scheme to defraud.  The wire communication must pass between two or more states or between the United States and a foreign country. In this case, the wire communications charged in the Indictment are telephone calls and text messages from New York State to out-of-state telephone numbers. The use of the wires need not itself be a fraudulent representation. It must, however, further or assist in the carrying out of the scheme to defraud.  It is not necessary for a defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud.

Evidence that a defendant agreed to cause the wires to be used by others is sufficient. This does not mean that a defendant must specifically have authorized others to do the

communication.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.

Although the government must establish beyond a reasonable doubt the particular use of the wires charged in the Indictment, the government does not have to prove that the wires were used on the exact date charged in the Indictment. It is sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a date substantially similar to the dates charged in the indictment.

Aiding and Abetting

I remind you that by referencing Section 2 of Title 18 and/or using the language "together with others," Counts Six through Fifteen also incorporate a theory of aiding and abetting. I have already charged you on that theory. Those instructions apply here.

Source: *United States v. Boyland*, No. 11-CR-850 (SLT) (E.D.N.Y.), Jury Instructions, dated Mar. 4, 2014, (ECF Dkt. No. 159-1), aff'd, 862 F.3d 279 (2d Cir. 2017) (hereinafter, "Boyland Inst.").

REQUEST NO. 5

MONEY LAUNDERING AND MONEY LAUNDERING CONSPIRACY

I am now going to instruct you as to the elements of an additional type of racketeering act alleged in Count One, which are crimes relating to money laundering that are indictable under Title 18, United States Code, 1956, specifically, money laundering and conspiracy to commit money laundering. I will explain each of these in turn.

Money Laundering

In order to prove the crime of money laundering, in violation of Section 1956(a)(3), the government must establish beyond a reasonable doubt each of the following three elements:

First, that a defendant conducted or attempted to conduct a financial transaction which affects interstate or foreign commerce in any way or degree. The term "conducts" includes initiating, concluding, or participating in initiating or concluding a transaction. A "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition of property. The term "financial transaction" means a transaction involving a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree, or a transaction which in any way or degree affects interstate or foreign commerce and involves the movement of funds by wire or other means, or involves one or more monetary instruments, or involves the transfer of title to any real property, vehicle, vessel or aircraft. A "transaction involving a financial institution" includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase of sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution by whatever means.  The term "interstate or foreign commerce" means commerce between any combination of states,

territories or possessions of the United States, or between the United States and a foreign country.  The term "monetary instrument" includes, among other things, coin or currency of the United States or any other country, personal checks, traveler's checks, cashier's checks, bank checks, money orders and investment securities or other negotiable instruments in bearer form or otherwise in such form that title thereto passes upon delivery.

Second, that the transaction involved property represented by a law enforcement officer, and believed by a defendant, to be the proceeds of some form of unlawful activity. For the purposes of this section, a law enforcement officer includes federal law enforcement officers and any other person acting under the direction or with the approval of a federal official authored to investigate or prosecute money laundering. I instruct you that for purposes of this case, the individual known as "Max Larsen," who testified during this trial, is a law enforcement officer.

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity. Proceeds can be any kind of property, not just money.

In order to sustain its burden of proof on this element, the government is not required to prove that the law enforcement officer made an express affirmative statement to a defendant that the property involved was the proceeds of unlawful activity, in this case, fraud in the sale of securities. Instead, the government must prove that the law enforcement officer made a defendant aware of circumstances from which a reasonable person would infer that the property was the proceeds of illegal activity, and that a defendant believed that the property was the proceeds of illegal activity. You should consider all of the evidence in determining whether the government has satisfied this standard.  The government is not required to prove that the property actually was the proceeds of some form of unlawful activity.

28

Third, that a defendant acted with the intent to promote the carrying on of specified unlawful activity. With respect to promoting or carrying on of specified unlawful activity, to act intentionally means to act deliberately and purposefully and not by mistake or accident with the purpose of promoting, facilitating or assisting of carrying on the fraud in the sale of securities.  If you find that a defendant acted with the intention or deliberate purpose of promoting, facilitating or assisting in the carrying on of fraud in the sale of securities, then this element is satisfied.

Conspiracy to Commit Money Laundering

Section 1956(h) of Title 18, United States Code provides:

> [Any person who conspires to commit any offense defined in this section [shall be guilty of a crime].

The government has alleged that one of the types of racketeering acts that may be evidence of the pattern of racketeering activity is conspiracy to commit money laundering. I have already explained the law of conspiracy to you.    To prove money laundering conspiracy, the government must establish the following elements beyond a reasonable doubt:

First:      two or more persons entered into the particular unlawful agreement to commit the money laundering offense I just explained; and

Second:    the conspirator knowingly and intentionally became a member of the conspiracy.

As I explained in connection with the elements of racketeering conspiracy, the government does not need to prove that money laundering was committed or attempted for you to find that the type of racketeering conduct of money laundering conspiracy has been proven. Rather, this type of racketeering conduct alleges only that a conspirator conspired to commit the offense of money laundering.

Source: *United States v. Petrossi*, 16-CR-234 (BMC) (E.D.N.Y.), Jury Instructions dated May 2, 2017

REQUEST NO. 6

<u>OBSTRUCTION OF JUSTICE AND CONSPIRACY TO COMMIT THOSE OFFENSES</u>

I will now instruct you as to the elements of an additional type of racketeering act alleged in Count One, which are crimes relating to obstruction of justice that are indictable under Title 18, United States Code, Section 1512, specifically, (1) obstruction of a proceeding, (2) evidence tampering, and (3) conspiracy to commit those offenses. I will explain each of these in turn.

<u>Obstruction of Justice – Obstruction of a Proceeding</u>

In order to prove a defendant guilty of tampering with evidence in a federal proceeding, the government must prove each of the following elements beyond a reasonable doubt:

<u>First</u>, that a defendant altered (or destroyed or mutilated or concealed) any record, document or tangible object, as alleged in the Indictment;

<u>Second</u>, a defendant acted with the intent to impair the object's integrity or availability in an official proceeding (meaning, a proceeding before a court, judge or federal agency); and

<u>Third</u>, that a defendant acted corruptly (meaning, to act with an improper purpose and to engage in conduct knowingly and dishonestly and with the intent to obstruct, impede or influence the due administration of justice).

<u>Obstruction of Justice – Evidence Tampering</u>

In order to prove a defendant guilty of tampering with a witness (or victim or informant) by intimidation or corrupt persuasion, the government must prove each of the following elements beyond a reasonable doubt:

First, that on or about the date charged, a defendant knowingly used intimidation, threatened, or corruptly persuaded an individual, or attempted to do so, or engaged in misleading conduct toward an individual; and

31

Second, that a defendant acted knowingly and with the intent to influence testimony in an official federal proceeding, (b) alter, destroy, mutilate or conceal an object with the intent to impair the object's integrity or availability for use in an official federal proceeding, (c) evade legal process summoning that person to appear, or produce a record, document or other object, in an official federal proceeding, (d) to be absent from an official proceeding to which such person has been summoned by legal process).

Source:  2-46 Modern Federal Jury Instructions-Criminal P 46.09, 46.10 (2017); *United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007); *United States v. Gabriel*, 125 F.3d 89 (2d Cir. 1997); *United States v. Ortiz*, 367 F. Supp. 2d 536, 543 (S.D.N.Y. 2005).

REQUEST NO. 7

COUNTS TWO, FOUR, and SIX: WIRE FRAUD CONSPIRACY

In Counts Two and Six of the Indictment, the defendants JUAN ÁNGEL NAPOUT and

JOSÉ MARIA MARIN are charged with certain wire fraud conspiracies related to the Copa

Libertadores and the Copa América, respectively.   In Count Four of the Indictment, the

defendant JOSÉ MARIA MARIN is charged with another wire fraud conspiracy related to the

Copa do Brasil.   I will read each of the counts to you now:

Count Two relates to the Copa Libertadores and reads as follows:

> In or about and between 2000 and 2015, both dates being
> approximate and inclusive, within the Eastern District of New
> York and elsewhere, the defendants JUAN ÁNGEL NAPOUT and
> JOSÉ MARIA MARIN, together with others, did knowingly and
> intentionally conspire to devise a scheme and artifice to defraud
> FIFA and CONMEBOL and their constituent organizations,
> including to deprive FIFA and CONMEBOL and their constituent
> organizations of their respective rights to honest and faithful
> services through bribes and kickbacks, and to obtain money and
> property by means of materially false and fraudulent pretenses,
> representations, and promises, and for the purpose of executing
> such scheme and artifice, to transmit and cause to be transmitted
> by means of wire communication in interstate and foreign
> commerce, writings, signs, signals, pictures, and sounds, to wit:
> wire transfers, contrary to Title 18, United States Code, Section
> 1343.

Count Four relates to the Copa do Brasil and provides as follows:

> In or about and between 2011 and 2015, both dates being
> approximate and inclusive, within the Eastern District of New
> York and elsewhere, the defendant JOSÉ MARIA MARIN,
> together with others, did knowingly and intentionally conspire to
> devise a scheme and artifice to defraud FIFA and CBF and their
> constituent organizations, including to deprive FIFA and CBF and
> their constituent organizations of their respective rights to honest
> and faithful services through bribes and kickbacks, and to obtain
> money and property by means of materially false and fraudulent
> pretenses, representations, and promises, and for the purpose of
> executing such scheme and artifice, to transmit and cause to be

33

transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit: wire transfers, telephone calls and emails, contrary to Title 18, United States Code, Section 1343.

Count Six relates to the Copa América and provides as follows:

In or about and between 2010 and 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JUAN ÁNGEL NAPOUT and JOSÉ MARIA MARIN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud FIFA, CONCACAF, and CONMEBOL and their constituent organizations, including to deprive FIFA, CONCACAF, and CONMEBOL and their constituent organizations of their respective rights to honest and faithful services through bribes and kickbacks, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit: wire transfers, contrary to Title 18, United States Code, Section 1343.

I have already instructed you with respect to the law of conspiracy and with respect to honest

services wire fraud in connection with the types of racketeering conduct alleged in Count One.

REQUEST NO. 8

<u>COUNTS THREE, FIVE, and SEVEN: MONEY LAUNDERING CONSPIRACY</u>

In Counts Three and Seven of the Indictment, the defendants JUAN ÁNGEL NAPOUT and JOSÉ MARIA MARIN are charged with certain money laundering conspiracies related to the Copa Libertadores and the Copa América, respectively, and in Count Five the defendant JOSÉ MARIA MARIN is charged with another money laundering conspiracy related to the Copa du Brazil.  I will read each of these charges to you now:

Count Three relates to the Copa Libertadores and provides as follows:

> In or about and between 2000 and 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JUAN ÁNGEL NAPOUT and JOSÉ MARIA MARIN, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds, to wit: wire transfers, from places in the United States to and through places outside the United States and to places in the United States from and through places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343, all contrary to Title 18, United States Code, Section 1956(a)(2)(A).

Count Five relates to the Copa do Brasil and provides as follows:

> In or about and between 2011 and 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSÉ MARIA MARIN, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds, to wit: wire transfers, from places in the United States to and through places outside the United States and to places in the United States from and through places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343, all contrary to Title 18, United States Code, Section 1956(a)(2)(A).

Count Seven relates to the Copa América and provides as follows:

> In or about and between 2010 and 2015, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JUAN ÁNGEL NAPOUT and JOSÉ MARIA MARIN, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds, to wit: wire transfers, from places in the United States to and through places outside the United States and to places in the United States from and through places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343, all contrary to Title 18, United States Code, Section 1956(a)(2)(A).

I have already instructed you with respect to money laundering conspiracy and money laundering in connection with the types of racketeering conduct charged in Count One.  Those same instructions apply here.