1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      : 15-CR-00252(PKC)
                               :
                               :
        -against-              : United States Courthouse
                               : Brooklyn, New York
                               :
                               :
                               : Wednesday, August 16, 2017
JEFFREY WEBB, et al.,          : 12:30 p.m.
                               :
         Defendant.            :
                               :

- - - - - - - - - - - - - - X

        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE PAMELA K. CHEN
                    UNITED STATES DISTRICT JUDGE


                    A P P E A R A N C E S:


For the Government:   BRIDGET M. ROHDE, ESQ.
                      Acting United States Attorney
                      Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, New York 11201
                 BY:  SAMUEL P. NITZE, ESQ.
                      KEITH EDELMAN, ESQ.
                      KAITLIN TERESA FARRELL, ESQ.
                      Assistant United States Attorneys


For the Defendant:    BALLARD SPAHR, LLP
  Jose Maria Marin     919 Third Avenue
                       37th Floor
                       New York, New York 10022
                 BY:CHARLES ALLEN STILLMAN, ESQ.
                      JAMES ALFRED MITCHELL, ESQ.
                      BRADLEY GERSHEL, ESQ.

2

```
For the Defendant:    GREENBERG TRAURIG, LLP
Juan Angel Napout         One International Place
                          Boston, Massachussetts 02110
                      BY:A. JOHN PAPPALARDO, ESQ.
                          ELLIOT H. SCHERKER, ESQ.
                          JACQUELINE BECERRA, ESQ. ***


                      PINERA-VAZQUEZ LAW FIRM
                          1900 SW 3rd Avenue
                          Miami, Florida 33129
                      BY:SILVIA PINERA-VAZQUEZ, ESQ.
                          (Via Speakerphone)


For the Defendant:    BRUCE L. UDOLF, ESQ.
 Manuel Burga             500 East Broward Boulevard
                          Suite 1400
                          Fort Lauderdale, Florida 33394
                      BY:BRUCE L. UDOLF, ESQ.
                          (Via Speakerphone)


*** Participated via speakerphone




Court Reporter:  Stacy A. Mace, RMR, CRR
                     Official Court Reporter
                     E-mail:  SMaceRPR@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.
```

SAM     OCR     RMR     CRR     RPR

Proceedings                                    3

1                    (In open court.)

2            THE COURTROOM DEPUTY:  Criminal cause for status

3    conference, Docket 15-CR-252, United States versus Jose Marin,

4    Juan Napout and Manuel Burga.

5            Will the parties please state their appearances for

6    the record?

7            MR. NITZE:  Sam Nitze, Keith Edelman and Kaitlin

8    Farrell for the United States.

9            Good afternoon, Judge.

10           THE COURT:  Good afternoon.

11           MR. EDELMAN:  Good afternoon.

12           MS. FARRELL:  Good afternoon.

13           MR. PAPPALARDO:  Good afternoon, Your Honor.  John

14   Pappalardo on behalf of Mr. Napout.

15           MR. SCHERKER:  Elliot Scherker on behalf of

16   Mr. Napout.

17           THE COURT:  Good afternoon to both of you.

18           MR. SCHERKER:  Good afternoon.

19           MR. STILLMAN:  Your Honor, Charles Stillman, Jim

20   Mitchell and Brad Gershel on behalf of Mr. Marin.

21           MR. MITCHELL:  Good afternoon, Judge.

22           THE COURT:  Good afternoon to you gentlemen.

23           And on the phone.

24           MS. PINERA-VAZQUEZ:  Hi, I'm sorry, this is Silvia

25   Pinera.  We can barely hear the court proceedings.

```
                         Proceedings                    4
```

1          THE COURT:  All right, I will keep my voice up.  Can

2     you hear me better now?

3          MS. PINERA-VAZQUEZ:  I can hear you now.  I didn't

4     hear any of the appearances.  Would you like us to state our

5     appearances now?

6          THE COURT:  Yes.

7          MS. PINERA-VAZQUEZ:  This is Silvia Pinera-Vazquez

8     and Jacqueline Becerra on behalf Juan Angel Napout on the

9     phone from Pinera-Vazquez.

10          THE COURT:  All right, good afternoon to you both.

11          MS. BECERRA:  Good afternoon.

12          MR. UDOLF:  Good afternoon, Your Honor.  This is

13     Bruce Udolf on behalf of Manuel Burga.

14          THE COURT:  Okay, good afternoon to you.

15          All right, as the parties know we are here on two

16     separate sets of motions.  The first one, which was filed

17     originally by Mr. Napout, but joined with some amplification

18     by the other two defendants, seeks essentially three things, I

19     guess you could say.  The first is translations of all foreign

20     language discovery, and that would include any documents that

21     the Government intends to introduce at trial.

22          And the second is Spanish language transcriptions

23     for all audio recordings of which the Government has provided

24     English translations.

25          Now, I actually grouped together in some way, I

Proceedings                                          5

1    guess, the three defendants' separate requests, but I probably

2    should break them out to clarify something.

3           Mr. Napout's original request was to get English

4    translations of all foreign language documents that were

5    produced in discovery.  And that referred to documents, in

6    particular.  But Mr. Udolf and Mr. Mitchell expanded that

7    request to include, in essence, all foreign language

8    discovery.

9           I guess to you, Mr. Mitchell, did you mean to

10   include recordings and documents?

11          MR. MITCHELL:  No, I think I was -- we were joining

12   with respect to the --

13          THE COURTROOM DEPUTY:  I am sorry, you are going to

14   have to speak into the microphone.

15          MR. MITCHELL:  We are joining with respect to

16   Mr. Napout's motion for translations.  I understood their

17   motion to be on the documents --

18          THE COURT:  Correct.

19          MR. MITCHELL:  -- for translation of all foreign

20   language documents.

21          THE COURT:  Correct.

22          MR. MITCHELL:  So we join as to that with respect to

23   the issue of what the Government intends to use at trial, as

24   well as with respect to the tapes.  We just supplemented

25   because I don't think they included Portuguese tapes in their

```
                    Proceedings                       6
```

1    request.

2              MR. UDOLF:  Can you hear?

3              MS. PINERA-VAZQUEZ:  No.

4              I'm sorry to interrupt, but it seems like you guys

5    are coming in and out.  Is there any way that we can raise the

6    volume?

7              THE COURT:  All right, what I am going to do is ask

8    all the lawyers to use the microphone.

9              MR. MITCHELL:  Is this better, Ms. Pinera?  Can you

10   hear me?  Oh, hopefully.

11             Judge, all I was saying was that we join with

12   respect to Mr. Napout's motion on the document translations,

13   which I understand to be for all language -- all non-English

14   language translations.

15             THE COURT:  That is your request, not Mr. Napout's

16   original request.

17             MR. MITCHELL:  I think the original request actually

18   was for all of them, and then on the tapes they just asked for

19   the Spanish.

20             THE COURT:  You are right.

21             MR. MITCHELL:  We ask that it include the

22   Portuguese, that's all.

23             THE COURT:  Okay.  And then I think, Mr. Udolf, you

24   joined in the request for the Government to provide all

25   translations of all documents, regardless of the original

Proceedings                                                7

1   language, and that would be in addition to the Spanish -- oh,

2   I guess actually, I am so sorry.  Let me go back again.

3          This actually relates to, okay, there are two

4   categories of documents essentially.  One are the English

5   translations of all of the foreign language documents produced

6   in discovery.  That is what everybody wants.

7          Second, and this is where the expansion comes from

8   the other two defendants, the defendants collectively want

9   transcriptions in the original language of all audio

10  recordings provided by the Government.

11         So have I characterized that correctly at this

12  point?

13         MR. MITCHELL:  Yes, Your Honor.  I think all we did

14  was add the Portuguese because I think they had just left it

15  off in their original question.

16         Mr. Udolf included, I think, every other potential

17  language.  Although, I don't think there are any other tapes

18  other than Portuguese and Spanish.

19         THE COURT:  Okay.

20         MR. MITCHELL:  But, basically, we just wanted to

21  make sure that if there were interim transcripts that were

22  made in a language of Spanish or Portuguese or some other

23  language, we get those interim transcripts.

24         THE COURT:  All right.

25         And then the other motion made by Mr. Napout, in

Proceedings                                                  8

1   essence, asked for a discovery cut-off date.

2          So let me address first the request for the

3   translations and transcriptions.  So first of all, as the

4   Government does note, they are not required to provide English

5   translations of all discovery that they provide.  I think

6   Judge Ross's decision in <u>Mayes</u> is instructive, certainly in

7   part, because it relates to audio recordings, but I think it

8   is equally applicable to documents.  And, basically, she wrote

9   in that decision, which is 2011 Westlaw 5320976 from

10  November 2nd, 2011, that the Government is under no obligation

11  to provide a transcript of audio recordings it has made

12  available to defense counsel.

13         And then she goes on to say that draft transcripts

14  are provided by the Government voluntarily to assist the

15  defense in preparing for trial.  And then she, of course, goes

16  on to say that it is fair and appropriate for the Government

17  to only produce draft transcripts with stipulations, and this

18  district has routinely enforced those stipulations with regard

19  to draft transcripts.

20         A more recent decision on that issue was Judge

21  Kuntz's decision in <u>U.S. versus Bumagin</u>, 136 F. Supp. 3d, 361

22  from September 29th, 2015, and Judge Kuntz reiterates that

23  stipulations relating to draft transcripts are enforceable and

24  operate to prohibit the use of the draft transcript as limited

25  by the stipulations.

Proceedings                                                    9

1        Now, the reason I cite Mayes is because the

2   defendants all want the Government to, essentially, translate

3   into English all of the foreign language documents that were

4   produced during discovery beyond those that the Government

5   intends to use at trial, and there simply is no support in

6   Rule 16 or cited by any of the defendants for requiring the

7   Government to do that.

8        I also think, as the Government correctly points

9   out, that in this case that would be an inordinately

10  burdensome and largely useless endeavor for the Government to

11  engage in because as the parties themselves argued to me

12  repeatedly, there are many, many documents that do not relate

13  directly to the defendants, themselves.  Mr. Napout argues

14  this most vociferously and repeatedly that there is so much

15  discovery that does not really relate to him, but in theory

16  relates to the broader RICO conspiracy that is alleged; or is

17  just being provided because the Government is complying with

18  its discovery requests to the fullest extent where we have a

19  case that involves a hundred-plus page Indictment and 20-plus

20  indicted individuals.

21       So I just do not see any basis in the law or in

22  practical terms for granting the request for all discovery

23  documents to be translated by the Government.  And the

24  Government does cite some cases related to CJA funds being

25  used for translations, but even there, there are limits placed

Proceedings                                          10

1   on what documents have to be translated and it has to be tied

2   in some way to a genuine issue of need or utility, and I do

3   not see that here.

4          That being said, the Government, of course, is

5   required to, and acknowledges that it is required to provide

6   English translations for all documents it intends to use as

7   exhibits at trial.  I understand that they have been doing

8   that throughout the course of discovery.

9          MR. STILLMAN:  Excuse me, Your Honor.

10          THE COURT:  Actually, let me take it back.  With

11   respect to documents, I gather that that is not true.  But

12   with respect to about 200 audiotapes, the Government has

13   provided English translations/transcriptions, and I know that

14   there is another part of the motion that complains about that

15   to some extent.  But my understanding also from the

16   Government, and obviously I am accepting their representation,

17   is that a good part of the documents that will be introduced

18   by the Government at trial are statutes and regulations in

19   foreign languages that can be readily translated by all

20   parties, I gather, and also are not going to be particularly

21   controversial or subject to investigation, such that the

22   translation is going to be so critical to trial preparation.

23          The other part of the documentary evidence, I

24   understand, are bank records and those do not contain, as

25   represented to me by the Government, a lot of narrative or

SAM     OCR     RMR     CRR     RPR

Proceedings                                                11

1   text or material in foreign languages that has to be

2   translated, but rather it will have a stock set of terms such

3   as accounts or balances, credits, et cetera, that can be

4   readily translated by the Government and turned over.  But I

5   assume most of the bank records have numbers, more than they

6   do text.

7             Now, obviously, that does not represent everything,

8   and the Government will have to, with all due speed, turn over

9   English translations of all the documentary exhibits that they

10  intend to introduce.

11            So, perhaps, Mr. Nitze, you can give me some idea of

12  the volume of documents we are talking about in terms of trial

13  exhibits or likely trial exhibits that have yet to be turned

14  over with respect to the English translation?

15            MR. NITZE:  Yes, thank you, Your Honor.  If I could

16  just go over a couple of points you just made, and then answer

17  your question.

18            First, you are right with respect to the recordings.

19  We recently turned over to two of the three defendants under

20  stipulation updated and fairly well updated draft English

21  language transcripts of, I think it's approximately 50

22  recordings that are the ones that are most relevant to trial.

23  And we intend to with respect to those, to trim them down

24  further and to submit certified proposed trial --

25            MS. PINERA-VAZQUEZ:  I am sorry to interrupt.  This

Proceedings                                           12

1   is Sylvia.  Can whoever is speaking speak up just a little bit

2   because we are having a hard time hearing?

3              THE COURT:  Yes, hold on.  Mr. Nitze will use the

4   microphone and recap a little of what he said.

5              And also in that regard, Mr. Nitze, you are right, I

6   stand corrected.  It's not 200 total recordings, but 150

7   total, 50 of which have now updated transcripts, right?

8              MR. NITZE:  That's correct, Your Honor.

9              So just to recap for those on the phone --

10             THE COURT:  Speak louder than you are used to for

11  the folks on the phone.

12             MR. NITZE:  Is this better, Silvia?

13             MS. PINERA-VAZQUEZ:  Yes.

14             THE COURT:  Can you hear, Mr. Udolf?

15             MR. UDOLF:  I can hear now, yes.

16             THE COURT:  We are all going to yell.  Mr. Nitze, I

17  know this is not your personality, but yell.

18             MR. NITZE:  So we have recently turned over updated,

19  and I would say fairly well updated, draft transcripts of 50

20  or so of the recordings made during the course of the

21  investigation.  The recordings were turned over long ago.  And

22  our plan with respect to those and trial exhibits is to narrow

23  them further.  We do not intend to introduce into evidence 50

24  recordings or anything close to that, nor do we intend to

25  introduce the full -- some of these recordings are quite

Proceedings                                              13

1    lengthy.  We don't intend to introduce whole hours' worth of

2    recordings.  And so the documents, the translations that

3    defense counsel have now I do think provide a basis for having

4    discussions about accuracy or if there are sections they feel

5    were missing, that discussion can begin, but we will also be

6    producing proposed final transcripts that will then be at the

7    level of this is what we plan for the jury to hear and

8    understand.

9                THE COURT:  But those are the audios?

10               MR. NITZE:  I am now talking about audio, yes.

11               With respect to the documents, there are, as you

12   say, a number of trial exhibits that will be foreign language

13   documents, but that we expect will not be, with respect to

14   translations, particularly controversial.  These are

15   enterprise entity-type documents, statutes, codes of ethics,

16   bylaws, potentially some contracts, some of which the

17   defendants, themselves, were involved in either authoring or

18   approving; and certainly at least with respect to defendant

19   Napout, who we understand is not planning to contest the

20   enterprise or the racketeering conduct, we just don't think

21   these documents will be particularly controversial.

22               Bank records, there are some that are like account

23   statements, for example, where even just from the face of them

24   you can tell how they function because if you have ever seen

25   an account statement, they follow that format.  There are

Proceedings                                    14

1    others, wire transfer requests, for example, where the thrust

2    of what's happening in the document is clear, but where there

3    is -- there are sentences that we plan to translate and have

4    certified translations.

5              We expect to have the first batches of certified

6    documents that are potential trial exhibits, it's probably

7    going to over-translate at first, out this week.  And we plan

8    to continue to produce those on a rolling basis until we have

9    all have the potential -- the proposed trial exhibits out in

10   time for defense counsel to have their own translations done,

11   review them with their clients.  Most of these are Spanish

12   language documents and their clients are native Spanish

13   speakers, at least two of the three.  So that is the plan.

14             And then, ultimately, we would also propose to have

15   an exhibit list and disks with trial exhibits that also would

16   have, for those that are foreign language exhibits,

17   accompanying certified translations attached to them.  Again,

18   this would be before the start of trial.

19             THE COURT:  Well, to the extent it is on a rolling

20   basis, what is a realistic outside date for all of these

21   translated exhibits to be produced, do you think?

22             MR. NITZE:  We would propose to have final recording

23   transcripts, and I am focusing on those a bit because they

24   are --

25             THE COURT:  Longer.

SAM      OCR      RMR      CRR      RPR

Proceedings                                    15

1          MR. NITZE:  Well, they are longer and I think, my

2   guess is that there will be particular scrutiny paid to what

3   is said in a conversation where there are four people present.

4   What is something that might seem -- is audible to the

5   linguist, but not to somebody else.  Those seem important to

6   address, and that's why we've --

7          THE COURT:  Prioritized them.

8          MR. NITZE:  -- prioritized those.  So we would

9   propose to have the reduced -- those are already over, so it

10  can start -- turned over, but to have the proposed finals in

11  by the date of the 3500 material, which would be September

12  25th.  That's, I think, six weeks out from the start of jury

13  selection and likely, you know, longer than that out from when

14  they would actually be introduced.

15          And then to have the remainder of the exhibits three

16  weeks out from jury selection, from November 6th.  And I want

17  to emphasize there, these are not dates -- we are not

18  suggesting three weeks out there's a dump of exhibits, but

19  rather this process of batches coming, which can be reviewed,

20  will be complete by then.

21          I wouldn't want to say just as I sort of nod to the

22  practical realities, could there be another document or

23  something that would be after that deadline where we could

24  have a discussion about whether there is sufficient time to

25  review it, that would be one thing; but we would propose those

Proceedings                              16

1   as deadlines for trying to complete that process.

2          THE COURT:  Okay.  Did anyone want to say anything

3   in response to what the Government has just said?

4          Mr. Udolf, I will start with those on the phone.

5   Just on the documents, let's talk about documents for the

6   moment, English translations of documents, or even respond to

7   what I said.

8          MR. UDOLF:  Judge, I've probably got the least

9   ability to hear everything that was said by counsel.  So I am

10  going to have to defer to counsel that's present at the

11  hearing.

12         THE COURT:  Okay.

13         MR. UDOLF:  I got in, basically, around 50 percent

14  of what was said.

15         THE COURT:  Okay, let me start then with the counsel

16  who is here.

17         So whoever is seated here, Mr. Stillman or

18  Mr. Pappalardo, do you want to say something regarding just

19  the English translations of the documents?

20         I have, obviously, ruled that you do not get

21  translations of all the discovery documents, and then the

22  Government has offered up a timeline, in effect, for getting

23  the rest of the exhibit translations.

24         MR. SCHERKER:  Your Honor, we understand the general

25  rule on entitlement to translations, and we acknowledge that

Proceedings                                                17

1    in our motion.

2                THE COURT:  Right.

3                MR. SCHERKER:  Pardon me, if I might address the

4    Court from here so other people can hear?

5                THE COURT:  No, keep that closer to you and you do

6    not have to stand.

7                And let me make that note, I appreciate you

8    acknowledging it, because in your submission you really cited

9    cases that stand for the proposition that you are entitled to

10   translation of trial exhibits, and nothing more.

11               MR. SCHERKER:  That is correct, Your Honor.

12               THE COURT:  Okay.

13               MR. SCHERKER:  And the only reason we asked for more

14   is because of the open caveats in the Government's motion in

15   limine on other acts, which twice, as we point out in our

16   papers, our reply to that submission, reserves the right to do

17   pretty much whatever they want to do at trial.

18               THE COURT:  Right.

19               MR. SCHERKER:  So --

20               THE COURT:  That part of it, I think, is a bit

21   hyperbolic, if not histrionic.  I think that assumes that the

22   Government is going to be allowed to produce at the last

23   minute whatever it wants or introduce.

24               So I can assure you that we have a process that has

25   been quite controlled with a set of deadlines that have been

1    observed by all parties, including the Government, which has

2    turned over well in advance of trial its 404(b), let's call

3    it, or other acts or enterprise evidence.  And they will be

4    required to abide by the same deadlines and its

5    representations.

6            MR. SCHERKER:  And, Your Honor, I appreciate that.

7            What I was going to say was something much more

8    modest, I hope --

9            THE COURT:  Okay.

10           MR. SCHERKER:  -- and certainly less histrionic, was

11   that should an issue -- I want to be sure there's a protocol

12   in place if the Government elects to use that option, and I

13   don't mean with a document dump, but with a document we hadn't

14   seen before, but elects to use that option of amplifying their

15   case a bit --

16           THE COURT:  Right.

17           MR. SCHERKER:  -- and the documents involved that we

18   have not seen before in another language, that there is a

19   process in place where we can do what we're going to do at a

20   more leisurely pace now.  So that we would have an opportunity

21   to examine the translation and go through the same exercise to

22   be sure that we know what that document is; and if we have to

23   contest it, we can contest it.

24           THE COURT:  I do not have any concerns based on the

25   history of the case and how all parties have proceeded that we

Proceedings                                        19

1   are going to have undue or unfair surprise.  Granted, I,

2   obviously, am not privy to all of the discovery that has been

3   turned over, though I know it is quite voluminous and started

4   well over a year ago back before April 2016.  If anything, I

5   think the complaints are that there is too much information

6   being provided.

7            That being said, I am also aware that the Government

8   continues to get additional information and potential evidence

9   from other sources from around the world and other countries,

10  as well as more recent evidence that it got, I think around

11  March of this year, based on what they have characterized as

12  the obstruction or not based on, but because of what the

13  Government has described as the obstruction part of their case

14  against Mr. Napout, namely evidence --

15           MS. PINERA-VAZQUEZ:  I'm sorry.  I'm sorry to

16  interrupt again, but because I've got Bruce on the line with

17  us, but whoever is speaking, can you speak up a little bit

18  into the microphone?

19           THE COURT:  All right, can you hear me now?

20           MS. PINERA-VAZQUEZ:  Yes, that's much better.  If

21  you speak a little bit louder, that's better, otherwise you

22  come in and out.  Thank you.

23           THE COURT:  All right.

24           So what I was saying was I am also aware that some

25  evidence is coming in belatedly it might appear.  It might

Proceedings                                          20

1    appear belatedly, but there have been good reasons.  So, for

2    example, recently obtained search evidence is some of what you

3    cited, and I am a little concerned about the way it has been

4    characterized as if the Government was holding out on certain

5    information, which they only recently were able to obtain, in

6    part.  And, again, this is the Government's representation,

7    because of what they called obstructive conduct by your

8    client, in terms of, I think, concealing or making some of the

9    electronic devices in evidence unavailable to the Government

10   for a period of time.

11          So without wading into the specifics of it, I

12   understand two things.  One is that there has been a large

13   volume of discovery produced over the course of the last

14   year-and-a-half, that there will be some additional discovery

15   that will continue to be produced, but, and this is thirdly, I

16   guess, I do not perceive at this time that any of the later

17   discovery or the rolling basis of the discovery is due to a

18   lack of diligence or forthcomingness by the Government, but

19   rather they have been trying to release the information as

20   soon as possible subject to certain constraints.  And I think

21   one of the recent ones is trying to go through a privilege

22   review of Mr. Napout's device-related evidence.

23          So unless you are going to tell me something

24   different, I do not perceive that we have an issue of lack of

25   diligence or hiding the ball at all by the Government or

Proceedings                    21

1   trying to delay disclosure to gain some tactical advantage.

2          MR. SCHERKER:  Just so we're clear on what we're

3   asking for, I think the Court's order setting this hearing

4   identified what -- there was no request for sanctions or to

5   come down on the Government.  What we --

6          THE COURT:  You want some assurance.

7          MR. SCHERKER:  -- need is a cut-off date and

8   assurance.  And if I might, there were statements that we

9   would be done in April of 2016 with most of the discovery,

10  which we point out in our motion.  But, again, we need to be

11  done at a reasonable time before trial, and we accept

12  September 25th as reasonable.  That's when we're getting

13  Giglio, that's when we're getting Jencks, and I believe we

14  suggested that in our motion.  I wasn't sure what the

15  three-week window meant exactly, so I am having a hard time

16  processing it.

17         MR. NITZE:  If I could repeat just that point on

18  scheduling.  The proposal was that by September 25th, the date

19  that our sort of non-sensitive Jencks is due, to put it that

20  way, we would have finalized or proposed finalized transcripts

21  of audio recordings that we would seek to put into evidence.

22  And the basis for that deadline being there is just,

23  hopefully, we can begin to have those discussions before then,

24  but those translations may be the subject of more back and

25  forth just given the nature of the underlying substance.  It

Proceedings                                           22

1    is not a contract in black and white, it's people talking

2    picked up on a bodywire sometimes.

3         The three-week deadline was three weeks out that we

4    would then have our, essentially our exhibits, documentary

5    exhibits translated and produced with certified translations.

6    And I did want to emphasize that the proposal is not that

7    three weeks out from the date of jury selection we turn over a

8    disk full of all the translations and say good luck, but

9    rather that on a rolling basis between now and then batches

10   will be going out.  We expect the first batch to go out this

11   week, and that process is well underway, but that would be the

12   date by which we would have completed that process.  Again,

13   with an exception not for a dump close to trial, but just the

14   inevitable stray document.

15        THE COURT:  Right.

16        MR. MITCHELL:  Your Honor, can I ask one question

17   just for point of clarification?

18        It might be helpful in understanding this three-week

19   proposal if Mr. Nitze had some sense to sort of give an

20   estimate of the volume.  Is there pages or documents?  I mean

21   how much material is there that I call documents that you

22   intend to use at trial that you need to translate; and if you

23   can give us some sense?  Because if it's a million pages or

24   whatever, we have a different issue on the three weeks.

25        MR. NITZE:  Right, it's not a million pages, I don't

SAM     OCR     RMR     CRR     RPR

Proceedings                                    23

1   think, but it is significant volume.  And that's, in part, to

2   pick one example, contracts related to the Copa Libertadores.

3   They are not very lengthy contracts, we won't probably put in

4   every contract that was inked on the tournament, but they are

5   legal documents written in Spanish.  I think documents that

6   all three trial defendants are intimately familiar with and

7   whose contents are not particularly controversial, they set

8   forth tournament additions, amounts to be paid and so forth,

9   but there is some length and density to those documents and

10  there will be a fair number of contracts.  I mean, you know, I

11  don't know if dozens is right, that's probably not right, but

12  a lot of contracts.

13          THE COURT:  Let me interject actually, Mr. Nitze.

14          I do not think we need to go through this exercise

15  because let's face it, folks, you have all the documents that

16  Mr. Nitze is discussing in the original language.  And, quite

17  frankly, I know that your clients at least are able to

18  understand the vast majority of those documents or read them

19  themselves.  Plus, I am fairly certain that you all have

20  people on your staff who are able to read and speak Spanish.

21  So my concern here is that you all are trying to pin down in

22  some very rigid way this process.

23          My approach to this is going to be that the

24  Government understands the risks that they face by not timely

25  producing these translations of the documents that the

Proceedings                                    24

1    defendants have had, for some of them, I think, for over a

2    year.  So they will operate with that in mind and at their

3    peril to some extent, but I do not want to get into a lengthy

4    discussion about how much is going to be produced because it

5    is, ultimately, not going to affect what is going to happen

6    today.

7              Essentially, the Government's schedule is the one

8    they are proposing, which I find reasonable based on what they

9    have represented so far, with the understanding that the three

10   weeks out from trial is not the data dump date, but rather is

11   the date of anticipated completion of the turning over of

12   documents on a as-quickly-as-possible basis, with respect to

13   the translation of the documents.

14             So I apologize for interrupting you, but in part

15   because we have people who are on the phone and Mr. Nitze

16   could easily give a very lengthy explanation, I just do not

17   think it is going to change anything.  We are going to go with

18   the representation that these are the deadlines that the

19   Government is aspiring to meet.  If there are any documents

20   that get disclosed late with respect to the translations and

21   the parties generally feel like they are at a disadvantage,

22   then you should bring that to my attention immediately.

23             The Government obviously, as I said before, runs the

24   risk that they will not get the document in if they do not

25   turn over the translation in time.  So that is just where we

Proceedings                    25

1    are.

2           And my apologies, Mr. Mitchell.  It is not that your

3    question is irrelevant from your point of view, I just do not

4    think it is going to change anything we decide today.

5           MR. MITCHELL:  I appreciate it, Judge.

6           THE COURT:  So just to recap, September 25th is

7    certainly the aspirational date and the target date for the

8    Government to turn over the relatively finalized I think, or

9    finalized transcripts, English translations of the audio

10   evidence.

11          And then three weeks out, I do not know what the

12   date is exactly, but it would be sometime in mid October, the

13   Government will endeavor to complete its production of all

14   English translation of discovery documents that are going to

15   be used as exhibits at trial.

16          This does not foreclose any defendant from

17   complaining about the later disclosure, nor does it foreclose

18   the Government from introducing documents or seeking to

19   introduce documents that they discover later.  Obviously, they

20   are going to have to explain why they were turned over later,

21   or even admitting something that was turned over before, but

22   only gets a translation after these deadlines based on some

23   explanation for why they are being produced in English later

24   than these dates.

25          I think what the defense is getting out of this is,

Proceedings                              26

1  at least, some guidelines about which you can then cite as a

2  basis for a potential unfairness or prejudice argument, but

3  nothing is written in stone.  It's all going to be governed on

4  a case-by-case/document-by-document basis.  So no one should

5  go away thinking they have gotten hard and fast deadlines.

6          In that vein, Mr. Pappalardo, I am not going to set

7  a discovery cut-off.  I think as is true in all, or most

8  criminal cases I should say, it is a rule of reason.  The

9  Government will certainly have to explain any belated

10 disclosure that the defense claims is prejudicial to them.

11 And, obviously, the defense will have to explain why they are

12 prejudiced by this.  I think, as I said before, I have not

13 come to the conclusion that the Government has acted in any

14 dilatory fashion, and I think given the volume of evidence and

15 the number of defendants and the sources, the disparate

16 sources of that evidence, they have tried to act responsibly.

17         But that does not mean that at some point they

18 attempt to get in a document or turn over something that they

19 want to use that I bar because it is produced too late for

20 this trial for these defendants.

21         Let's turn to the second --

22         MR. STILLMAN:  Your Honor --

23         THE COURT:  Yes.

24         MR. STILLMAN:  I'm sorry.

25         THE COURT:  Mr. Stillman, please.

Proceedings                                27

1           MR. STILLMAN:  And may I ask just a question about

2     the translations?  And I appreciate what we've gotten,

3     received, and what we are going to receive.  My question is,

4     and so we are doing our part trying to, you know, listen and

5     look at the translations.  My question is are we listening to

6     the same tape recording; that is to say, we have the material

7     you produced -- I don't mean to speak directly, Your Honor.

8           THE COURT:  That's okay.  You can direct it to

9     Mr. Nitze and team --

10           MR. STILLMAN:  All right.

11           THE COURT:  -- because they will probably understand

12     what you're saying, I do not.

13           MR. STILLMAN:  So I mean are you listening to the

14     same tape that I am listening to when you are making your

15     translations or is yours -- do you have an enhanced tape from

16     which you're making the translation?

17           That is my question.

18           MR. NITZE:  To my understanding, we are listening to

19     the very same audio file.

20           MR. STILLMAN:  Thank you.

21           THE COURT:  Any enhanced tapes, though, should be

22     turned over.

23           MR. NITZE:  Yes, and we -- that I know of, and we

24     can doublecheck and I will be in touch with you, we haven't

25     enhanced any of the audio files.  We have been dealing with

Proceedings                                    28

1    the audio files as they are.  So I think the answer is yes, we

2    are listening to the same files.

3              MR. STILLMAN:  Thanks, Sam.

4              THE COURT:  Okay.  Now, I am going to state the

5    obvious, you all can work some of these issues out amongst

6    yourselves and not --

7              MR. PAPPALARDO:  Your Honor --

8              THE COURT:  Yes.

9              MR. PAPPALARDO:  -- if I may.  I have one question

10   with regard to the representation now for the second time by

11   the Government that we will receive the non-sensitive Jencks

12   by September 25th.

13             What is the sensitive Jencks; and who determines

14   that sensitivity, who decides that?  And what is the deadline

15   for the production of the sensitive Jencks, and why is it

16   sensitive?

17             THE COURT:  I interpreted this as relating to the

18   motion that you filed for the unsealing of certain -- well,

19   actually no, I should not say that.  That I have already

20   resolved.

21             MR. PAPPALARDO:  Right.

22             THE COURT:  I do believe we addressed this earlier,

23   and I think I understand what the Government is referring to,

24   but it has not necessarily been the subject of any fuller

25   briefing or discussion.

Proceedings                                    29

1          What can you say about that because we should, at

2     least, alert the parties to this issue?

3          MR. NITZE:  Yes, and we can review the transcript.

4     I believe this was discussed on the record, but I believe the

5     idea is that on September 25th, to the extent there are

6     statements of witnesses, the disclosure of which would pose

7     some risk, either to -- I mean the obvious one being to the

8     witness, themselves, or to some other aspect of investigative

9     activity, that we would seek leave to disclose those

10    statements later or potentially to have a redacted version

11    turned over on September 25th with the sensitive details to

12    come at a later date.  That would be the idea.

13         THE COURT:  Let me ask you one question, though.  I

14    think the time Ms. Mace, as I recall, was representing the

15    Government at that appearance that we had that conversation,

16    maybe I incorrectly assumed that that had to do with what was

17    addressed with respect to the search warrant applications.

18    And that has already been addressed, the parties have received

19    those with some limitations, but there is something else, I

20    gather, with respect to sensitive arguable Jencks material.

21         MR. NITZE:  Well, yes, and even in that context

22    there may be statements that are far more explicit and

23    revealing of locations or identities of people that we might

24    seek leave to submit at a later date.  We are committed to

25    turning over Jencks in advance of witness testimony and making

Proceedings                                    30

1   sure defense counsel has an opportunity to digest it and be

2   prepared to cross-examine witnesses, but there are real

3   sensitivities at issue here, which the Court is aware of and I

4   think the parties are too.  And so there likely are going to

5   be sets of statements or particular statements within

6   documents that we will seek leave to disclose at a later date

7   to respect those interests.

8            THE COURT:  The one thing we ought to do then maybe,

9   and we haven't done this yet, is probably build in a deadline

10  for briefing of that because the Government anticipates that

11  they will be seeking to delay the disclosure of certain Jencks

12  material, if I am hearing you correctly.  I would like to

13  build in a deadline for that briefing because I am assuming

14  that it will come, but you are anticipating filing that on

15  September 25th, I gather.

16           MR. NITZE:  Well, September 25th, which is six weeks

17  from the start of jury selection, which is well in advance of

18  when we normally would be turning over Jencks.  And so I think

19  the framework, to step back, was we will produce Jencks early,

20  significantly early.

21           THE COURT:  Yes.

22           MR. NITZE:  So that defense counsel has an

23  opportunity to begin to digest it and take all of that into

24  account.  And then at that point we would notify the Court

25  about which, if any, materials would be held for later

Proceedings                                        31

1   production.  But that is so far out from six weeks out from

2   even the start of jury selection, that there would be time

3   then to resolve that question.  And should the Court determine

4   that, look, this statement needs to go over now or this one

5   should go -- that we would propose a framework for the

6   disclosure of those materials.

7           THE COURT:  I do not necessarily have a problem with

8   September 25th being the date on which the Government moves,

9   because obviously that is the last date on which you could

10  move since you will otherwise be required to turn over all

11  Jencks if you do not move, but I do not have any sense of what

12  volume of materials we are talking about.

13          Not to pick up Mr. Mitchell's refrain, but in other

14  words percentage-wise of the Jencks that would be turned over

15  in the trial, are we talking about 50 percent you are going to

16  seek to or maybe 10 percent?

17          MR. NITZE:  Nothing close to 50 percent.

18          THE COURT:  Okay.

19          MR. NITZE:  We are going to put the percentage well

20  below that.

21          THE COURT:  Let's do this then, then I am going to

22  build into the schedule the filing of any request to delay

23  disclosure of Jencks material and fix that as the date on

24  which you will file that.  Maybe that is the default date, in

25  effect, but now at least all the parties are aware that such a

Proceedings                                        32

1   motion will be coming.  So, basically, you are going to be

2   seeking delayed disclosure of -- when I say delayed, delayed

3   vis-a-vis the dates that we have set.

4           MR. NITZE:  Less early.

5           THE COURT:  Yes, right, less early.

6           MR. MITCHELL:  Less early.

7           THE COURT:  The Government has a way of spinning

8   things, don't they; less early.

9           So let's set then a response date of -- which would

10  be difficult, I think, because this is going to be in camera,

11  I suspect, largely, but I will give the defense two weeks to,

12  at least, file something in response.  And I probably will not

13  require a reply of the Government.  You certainly can if you

14  want, but I am going to try to decide --

15          MS. PINERA-VAZQUEZ:  I'm sorry, this is Sylvia

16  again.  Judge, you are coming in and out.

17          THE COURT:  Okay.

18          MS. PINERA-VAZQUEZ:  We can barely hear you.

19          THE COURT:  Yes, all right.  So, basically, what I

20  have instructed the Government and advised the defense is that

21  September 25th will be the due date, which it is in effect now

22  anyway, for the Government to file a motion seeking to give

23  less early disclosure of Jencks material than the 25th for

24  some portion of the Jencks material, the Government thinks

25  it's less than 50 percent, perhaps I guess far less than

Proceedings                                          33

1    50 percent.  And the defense will have two weeks to respond.

2         Now, I recognize that the opportunity for the most

3    fullsome or meaningful response will be limited by the fact

4    that the Government is likely to seek to file their motion in

5    part in camera or under seal because I will have to see the

6    statements to appreciate the Government's argument, but I will

7    ask the Government to file as much of it as it can on the

8    public record and redact only as necessary so that the defense

9    has some opportunity to respond.

10        MR. NITZE:  Understood, Your Honor.

11        THE COURT:  So what is two weeks from September

12   25th?  October --

13        THE COURTROOM DEPUTY:  October 9.

14        THE COURT:  -- okay, October 9.  I will resolve that

15   motion before the end of the week so that to the extent that I

16   deny any portion of it, then the release of documents will

17   happen, I think, four weeks before trial or thereabout.

18        So let's turn now, unless anyone has any other

19   comments, to the second part of the request for

20   translation-related discovery, if you want to call it that,

21   from the Government.

22        In Mr. Napout's motion he seeks to get original

23   Spanish language transcriptions for all audio recordings in

24   Spanish, and then the other defendants are seeking to have

25   that apply to all foreign language audio recordings, which may

Proceedings                                        34

1   just be Portuguese, but I guess any other foreign language

2   audio recordings.

3            The Government has responded that they do not have

4   any such original language transcripts, and also that they are

5   not required to produce them.

6            Again, I am inclined to agree with the Government on

7   this.  They have provided the English language transcripts.

8   The defense has what they need to determine if they agree with

9   those transcripts based on its own review of the original

10  language transcripts.

11           MR. STILLMAN:  Your Honor, if they don't have them,

12  the other part of it is irrelevant.  You say you don't have

13  them, you don't have them.

14           MR. NITZE:  Right.

15           THE COURT:  Well, right, but then I don't know if

16  Mr. Napout was asking that they be created.  So I wanted to

17  finish that thought by saying --

18           MR. SCHERKER:  No, Your Honor.

19           THE COURT:  Okay.

20           MR. STILLMAN:  They can't give what they don't have.

21           THE COURT:  Okay, fine.

22           MR. SCHERKER:  The only reason for wanting what we

23  thought were what would in the normal course of events be the

24  original Spanish language, so we could compare the

25  translations.  We were never going to ask Mr. Nitze to

1   recreate a Spanish-language version of the tapes.

2          THE COURT:  So can I just ask you folks one simple

3   question?

4          Why didn't you just ask the Government that question

5   instead of filing a whole motion?  I do not mean to be obtuse

6   here.

7          MR. SCHERKER:  Your Honor, we did not know that

8   there were no original language.  We know in the ordinary

9   course of this process they were usually taken down in the

10  original language and then translated verbatim.

11         THE COURT:  You know, there is a thing called a

12  telephone.  You pick it up, you call the Government and say,

13  Do you have any?  Then you don't have to spend all this time

14  and money filing a motion.  Just a thought for the future,

15  please.

16         MR. SCHERKER:  Noted, Your Honor.

17         THE COURT:  Okay.  So I understand it does not

18  necessarily obviate your first request, but I am just saying

19  we could have made this a little shorter.

20         So the second request is effectively mooted because

21  the Government does not have what the defendants are seeking,

22  and the defendants acknowledge that they are not asking the

23  Government to create such original language transcripts.

24         So I think we have resolved all of the pending

25  issues.  Does anyone want to add anything, of the lawyers who

Proceedings                                        36

1    are here?

2              MR. SCHERKER:  Yes, Your Honor.

3              THE COURT:  Yes.

4              MR. SCHERKER:  This only arose as a result of the

5    Government's recent response to our motion for the

6    translations.  So this actually isn't part of our motion, but

7    it is before the Court because the Government has advised that

8    what we actually have now are draft transcripts.  And that the

9    Government's provided to the co-defendants updated and, now we

10   understand, higher quality draft transcript.

11             THE COURT:  I think more refined probably.  I don't

12   know if higher quality is the right term, but the Government,

13   I presume, repeatedly reviews its translations with someone

14   who is listening to the recording and decides if it's accurate

15   and tries to make it more accurate.

16             MR. SCHERKER:  I understand.  The stipulation that

17   is at the center of this dispute, the updated, for lack of a

18   better description --

19             THE COURT:  The draft transcripts.

20             MR. SCHERKER:  -- updated drafts have been provided

21   to my co-defendants.

22             THE COURT:  Right, the reason they have not been

23   provided to you, as I understand it, is because you are not

24   willing to sign the draft transcript stipulation.

25             MR. SCHERKER:  Your Honor, what we objected to, and

Proceedings                              37

1    I am reading from it, is all draft transcripts, whether in the

2    possession of defense counsel or the defendant, will be

3    returned to the United States when final transcripts are

4    provided by the United States when the jury is sworn in this

5    case, whichever occurs first.

6              THE COURT:  Okay.

7              MR. SCHERKER:  They are going to give them to us and

8    then they want them back.

9              THE COURT:  Once you get the final transcripts.

10             MR. SCHERKER:  But if I heard Mr. Nitze correctly,

11   and actually it is in his letter as well, but with the finals

12   that we are going to get, the finals that we are going to get

13   on September 25th or thereabouts is certified translated --

14   I'm sorry, wrong page -- is finalized transcripts of those

15   recordings or excerpts thereof it intends to introduce at

16   trial.

17             So we are not going to get a final transcript of all

18   of the recordings.

19             THE COURT:  Correct.

20             MR. SCHERKER:  And the only thing we will have is

21   the draft and we are prohibited from using it because we have

22   to give it back.

23             THE COURT:  Yes.

24             MR. SCHERKER:  That's what we object to.

25             THE COURT:  You can object, but you do not really

Proceedings                                              38

1    have any rights in this regard.  In other words, the

2    Government is providing to you as a courtesy a draft of the

3    exhibit or potential exhibits.  If the Government decides not

4    to use that audio as an exhibit, you do not really have a

5    right to their drafts and they are being provided as a

6    courtesy to assist you in your trial preparation.

7              So they can condition the provision of those drafts

8    to help you prepare for trial on the condition that you give

9    it back if they decide they do not want to use the exhibit and

10   once they give you a finalized transcript of anything that

11   they are going to use as an exhibit.

12             MR. SCHERKER:  Your Honor, if I might, before I

13   address why I made this request, and it only came up in the

14   response, I actually did some research in a room with Windows,

15   and if I could approach the bench and provide the prosecution.

16             THE COURT:  All right.  You are going to give a copy

17   to the prosecution as well?

18             MR. SCHERKER:  Yes, of course.

19             THE COURT:  Okay.  When you say with Windows, you

20   mean the computer type or the ones that let you see outside?

21             MR. SCHERKER:  Actually both.

22             THE COURT:  Okay, I assumed as much.

23             MR. STILLMAN:  As long as he returns it when he --

24             THE COURT:  Right, exactly.

25             MR. SCHERKER:  This is literally the only case I

Proceedings                                                    39

1    could find dealing with drafts.  It's written by Judge Rovner

2    of the Second Circuit when she was a district judge, and it

3    involved draft transcripts.  And what Judge Rovner says is

4    that, this is on page 3 of the right-hand number page:

5              The Government offered to produce draft transcripts,

6    but only on the condition that the defendants waive any right

7    to use the drafts at trial.

8              Exactly what the Government is doing here.  And not

9    to read the whole decision, in the penultimate paragraph the

10   Court says:

11             There may well be disputes as to the accuracy of the

12   final transcripts and the defendant is entitled to review,

13   without conditions, not only the final versions, but any and

14   all prior drafts prepared by the Government as well.

15             Now, for us, the Court is well aware from our

16   severance papers that there is exculpatory evidence for

17   Mr. Napout on those tapes.

18             THE COURT:  All right, fine.

19             MR. SCHERKER:  That is a draft transcript.

20             THE COURT:  No, the exculpatory evidence is on the

21   tape.

22             MR. SCHERKER:  It's in a foreign language.

23             THE COURT:  Fine.  You can get it translated if you

24   want to use it, although you are not going to be allowed to

25   use a tape of Mr. Napout.  I don't know if it is Mr. Napout or

Proceedings                                    40

1    somebody else saying something that is exculpatory.

2            As I understand it, the Government actually wants to

3    introduce that anyway as a false exculpatory.  But regardless

4    of who gets to use it, you are still not entitled to the

5    Government's draft transcript if they decide they are not

6    going to use it.  You certainly are entitled to the tapes and

7    to produce your own translation of it.  No one is barring you

8    from doing that.  But you are asking for the Government to

9    produce for you a transcript that you want to use for whatever

10   purpose at trial or to prepare for trial and to keep in

11   perpetuity.  There is no requirement that they do that.  And

12   the limited caselaw even that you cited me only stands for the

13   proposition that you are entitled to translations of whatever

14   the Government decides to use at trial.

15           I actually think I would refer you again to Mayes,

16   Judge Ross' decision, where she makes this point quite well

17   about why these draft transcript stipulations are enforceable,

18   which is that the Government gives these recordings to assist

19   defense at trial and that parting with these documents carries

20   a risk to the Government.  In their unedited, unfinalized

21   form, draft transcripts will almost inevitably contain typos,

22   ambiguities and preliminary impressions subject to subsequent

23   revision.  It is for this reason that the Government only

24   discloses them pursuant to the parties' execution of a

25   stipulation agreement limiting their use.  And then it goes on

SAM      OCR      RMR      CRR      RPR

Proceedings                                            41

1   to say that the stipulation ensures the accuracy of the

2   transcripts that are ultimately used and prevents the accuracy

3   of the transcripts from becoming the subject of pretrial

4   litigation.

5           So with all due respect to Judge Rovner, I do not

6   agree that defendants have the right to have the Government's

7   draft translations to use however they want to.

8           MR. SCHERKER:  Well, Your Honor, if I might then,

9   the procedure the Court is suggesting, and I would like to

10  request modestly that the door be left open if there is some

11  evidence on draft transcripts that we need because I guess

12  what I am hearing from the Government is if we identify

13  favorable evidence on the draft transcript, we have to then go

14  out and get it retranslated and then give the drafts back to

15  the Government.

16          THE COURT:  Exactly.

17          MR. SCHERKER:  And then we have to fight about the

18  accuracy of that translation with the Government.  That seems

19  to be the structure that is being created.

20          THE COURT:  That is the upshot.  And, in fact, if

21  anything, though, you are getting the benefit of the

22  transcript early on to decide if you think there is something

23  valuable to you in that tape and, therefore, you can get your

24  own translation.

25          MR. SCHERKER:  Nothing would bar us from using the

Proceedings                                              42

1    draft, identifying favorable evidence, and then creating our

2    own transcript of that section of the tape?

3             THE COURT:  Absolutely not.  That is the purpose of

4    it to some extent, or that is the benefit certainly of it.

5    But you do have to do the work yourself if you are going to

6    decide you want to use it.  You cannot use the Government's

7    draft transcripts.  They give them to you under that

8    condition, and that has been upheld and I agree that that is

9    appropriate here as well.

10            So if you want the draft transcripts for that very

11   purpose, to decide if they are useful to you, you have to

12   abide by the conditions that the Government gives them to you

13   under.

14            How is that for putting a preposition at the end?

15            Okay, so if you want them, like I said, to some

16   extent the complaint about not getting certain transcripts is

17   self-created.  You have to sign that stipulation if you want

18   the 50 updated draft transcripts.

19            Anything else that we need to resolve?

20            Okay, terrific.  Nice seeing you all again, and I

21   look forward to hearing from everyone soon enough.

22   September 25th is our next day.

23            Thank you to all of you on the phone.  I apologize

24   that the acoustics were less than perfect.

25            MR. NITZE:  Thank you, Judge.

SAM    OCR    RMR    CRR    RPR

Proceedings                                      43

1            THE COURT:  Okay, thank you.

2            (Matter adjourned. )

3

4

5

6

7

8                    *      *      *      *      *

9

10   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

11

12      /s/ Stacy A. Mace                    August 24, 2017

13   _____        _____
        STACY A. MACE                      DATE

14

15

16

17

18

19

20

21

22

23

24

25