# Ballard Spahr
### LLP

– – – – – – – – – – – – – – – – – – –
1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Charles A. Stillman
Tel: 212.223.0200 ext. 8006
Fax: 212.223.1942
stillmanc@ballardspahr.com

October 1, 2018

*Via ECF*

Honorable Pamela K. Chen
U.S. District Judge, EDNY
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201-1818

Re:    *United States v. Napout et al.*
       15-CR-252 (PKC)

Dear Judge Chen:

We write in reply to the government's September 26 letter to the Court, submitted in advance of the October 4, 2018 restitution hearing (ECF Dkt. No. 1030) (Gov't Br.).

I.    Lost Media and Marketing Revenues

With respect to the issue of what amount, if any, of lost media and marketing revenues that CONCACAF and CONMEBOL are to obtain as restitution, the government recognizes that given the "return of certain rights" to CONMEBOL and CONCACAF, "the claimed restitution amounts overstate the amounts of actual losses" demonstrated by those entities. Gov't Br. at 3-4. Consistent with Mr. Marin's earlier submission (ECF Dkt. No. 1030), the government acknowledges that, as to those contracts that have been renegotiated, any harm to the Claimants has been remediated. Gov't Br. at 4, 6. The government also acknowledges the inadequacy of the Claimants' arguments as to the remaining unmitigated contracts. *See*, *e.g.*, *id.* at 6 ("CONMEBOL does not meaningfully address the return of the Centenario rights in its restitution submission"); *id.* at 7 n.9 (describing the "other problematic assumptions" in CONCACAF's analysis). As an alternative, the government asks the Court to order restitution based on the amount of bribes promised to be paid. *Id.* at 5. For the following reasons, this measure of restitution – for which the government dedicates one paragraph and a footnote while, if adopted by the Court, would compel a restitution order in excess of $47 million as to Mr. Marin (*see id.* at 5, 7) – should be rejected.

Of relevance to this issue, the Court may recall trial testimony of Dr. Stefan Szymanski that, in substance, the amount of a bribe payment fairly represents the minimum harm to the entity that provided the contract. *See* Trial Tr. 191:6-15, Nov. 13, 2017. Mr. Marin moved *in limine* to exclude this testimony on grounds, *inter alia*, that it would be entirely speculative

Honorable Pamela K. Chen
October 1, 2018
Page 2

and extremely prejudicial.  ECF Dkt. No. 732.  The concern, of course, was that such general testimony did not provide any empirical analysis of the actual facts in this case, let alone one sufficient to support a conclusion as to any harm that had been suffered.  In response, the government stated that Dr. Szymanski "will not testify about the particular contracts at issue in this case and thus will not opine on the basis of an understanding about the particular facts of the defendants' alleged schemes."  ECF Dkt. No. 766 at 32 (emphasis added).  Now, however, still with no empirical analysis of loss actually presented by the Claimants, the government apparently supports the use of those general considerations to establish a numerical basis for a finding of harm, relying on various cases that purport to advance the very same theory and describing them as a "sound, conservative basis for an estimate of loss to the defrauded entities."  Gov't Br. at 5 n.7 (asserting that "courts commonly apply this basic economic logic to order restitution in the amount of commercial bribes paid to a disloyal servant at the expense of the victim entity.").

However, each of these cases is readily distinguishable from this one.  In *United States v. Madison*, 657 F.Appx 67 (2d Cir. 2016), the funds paid in the form of kickbacks to Defendant-Appellant Mitrow were "derived from payments that [victim entity] had previously paid."  Gov't-Appellee Brief at 12.  Here, the purported bribe payments were paid directly from the media and marketing companies to certain soccer officials, and not from the coffers of the supposed victim entities.  In *United States v. Gamma Tech Indus.*, *Inc.*, 265 F.3d 917, 929 (9th Cir. 2001), the court reached its decision in accordance with controlling state law, which provides that, "[e]verything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully."  *Id.* at 929.  Respectfully, the fact that California state law compelled the Ninth Circuit to attribute an employee's unlawful gains to his or her employer is of no significance in this case.[1]

II.      Requests for Legal Fees

The government, relying (as does Mr. Marin) on *Lagos v. United States,* 138 S.Ct. 1684 (2018), acknowledges that "simply incurring expenses 'during' the criminal case is

---

[1]      Nor are the other cases cited by the government any more compelling.  In *United States v. Gaytan*, the court similarly relied on California state law in reaching its decision.  342 F.3d 1010, 1011 (9th Cir. 2003).  Moreover, the defendant was a *public official* whose "vice endanger[ed] the very fabric of a democratic society, and "the Supreme Court long ago dismissed the argument that a public official may keep his ill-gotten gains because there is no 'loss' to the government."  *Id.*  In *United States v. Vaghela*, 169 F.3d 729 (11th Cir. 1999), the defendant conceded he owed restitution in the amount of the kickbacks he received.  *Id.* at 736.  Unlike the circumstances in this case, the district court in *Vaghela* was therefore not required to make specific factual findings as to whether the victim suffered a loss and the amount of those actual losses.

Honorable Pamela K. Chen
October 1, 2018
Page 3

insufficient" to support a claim of restitution.  Gov't Br. at 12.  That is, such expenses must be incurred both during the criminal investigation or prosecution *and* conducted at the government's invitation or request.  The government further observes that, "[a]bsent further specification," FIFA, CONCACAF and CONMEBOL have not presented sufficient proof that its legal fees and related costs (except those relating to Ms. Maennl and attendance at trial) are recoverable under the MVRA.  *Id.* at 14.  In response, and thirty days after the Court's deadline for the Claimants to provide "final submission" of "all legal and factual support upon which the claim is based, including any documentary support," Aug. 21, 2018 Sched. Ord., CONCACAF and CONMEBOL sought, and have now been granted leave to submit billing records that underlie their restitution requests.  ECF Dkt. Nos. 1036, 1037; Oct. 1, 2018 Dkt. Ord.  We respectfully request that the Court reconsider its order granting these requests, which are a month past due and come on the heels of the various responses submitted by Mr. Marin, defendant Napout and the government.

In addition, while the government apparently recognizes that such expenses, to be recoverable, need to be undertaken at their request or invitation (Gov't Br. at 12), its submission is tellingly silent as to what requests (other than as to Ms. Maennl's testimony)[2] were actually made by the government of the Claimants in this case.  Respectfully, while we object to the Court's consideration of the late submission of Claimants' legal bills, it seems unlikely, even if they are reviewed, that they alone (without further explication from the government) will provide sufficient information concerning the timing and substance of any government request or invitation, in light of the decision in *Lagos*.

We look forward to the opportunity to address these issues and any further questions of the Court at the October 4 hearing.

---

[2]    While the government observes that "the lack of specific billing records or other evidence prevents the Court from properly assessing the Victim Entities' requests for restitution relating to its internal investigation," it also asserts that FIFA is entitled to recover all necessary costs of preparing Ms. Maennl to testify, and for FIFA's outside lawyers to attend the trial.  Gov't Br. at 13.  Yet, FIFA has failed to provide any evidence that speaks to how CHF 125,030.33 – the amount FIFA seeks to recover in connection with producing documents to the government, preparing Ms. Maennl to testify and attendance of an outside attorney at trial, *see* ECF Dkt. No. 1006-1 – are all "necessary costs."  As such, that request should also be denied.

Honorable Pamela K. Chen
October 1, 2018
Page 4

Respectfully submitted,

/s/ CAS

Charles A. Stillman
James A. Mitchell
Bradley R. Gershel

cc:      All counsel of record (by ECF)