UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

- against -

JOSE MARIA MARIN,

                      Defendant.
-------------------------------------------------------X

**MEMORANDUM & ORDER REGARDING MOTION TO RELEASE BAIL FUNDS**
15-CR-252 (PKC)

PAMELA K. CHEN, United States District Judge:

Defendant Jose Maria Marin moves for the release of $1 million in cash that was deposited with the Court as part of his pre-trial bond. For the reasons discussed below, that motion is denied. Defendant Marin, however, may renew his motion following the Court's determination of restitution in this matter.

**I.**     **Factual Background**

The facts relevant to Defendant Marin's motion are as follows. On November 3, 2015, Marin posted $1 million in cash as part of the bond to secure his release pending trial. (Dkt. 73, at ECF[1] 3.) On December 22, 2017, Marin was convicted, at trial, of multiple counts of wire fraud conspiracy and money laundering conspiracy. (Dkt. 873.) The parties appeared for sentencing on August 22, 2018. At that time, the Court sentenced Marin to a total term of incarceration of forty-eight months, to be followed by two years' supervised release. (*See* Minute Entry, dated 8/22/18.) The Court also ordered fines totaling $1.2 million, forfeiture in the amount of $3,335,593, and special assessments totaling $600. (*Id*.) The Court deferred its determination of restitution, pursuant to 18 U.S.C. § 3664(d)(5), to allow the parties, alleged victims, and interested third parties to brief and submit evidence regarding the imposition of restitution; the Court set a briefing and

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

hearing schedule that contemplates a determination of restitution by November 20, 2018. (*Id.*; *see also* Scheduling Order, dated 8/21/18.) At the conclusion of the sentencing proceeding, the Court granted the government's motion, pursuant to 28 U.S.C. § 2044, and ordered that Marin's "bail money be held pending a resolution about whether and how it should be applied to any fines, forfeiture, or other monetary penalties that are imposed". (Minute Entry, dated 8/22/18.) Judgment reflecting the August 22, 2018 sentencing was entered on September 11, 2018. (*See* Judgment, dated 9/11/18, Dkt. 1015.)

On September 17, 2018, Defendant Marin filed the instant motion requesting that the Court "exonerate Mr. Marin's bond and release the cash portion to allow him to fund his defense, including fees and costs already incurred, as well as those necessary for his counsel of choice for a direct appeal." (Dkt. 1018, at 1.)[2] The government submitted its opposition on September 26, 2018. (Dkt. 1029.) At the Court's request, Marin filed a reply *ex parte*, accompanied by a publicly filed, redacted version. (Dkt. 1053.)[3]

## II. Legal Standard

Title 28, United States Code, Section 2044 ("Section 2044"), provides, in full, that:

On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of

---

[2] Given that the Court issued its Section 2044 order to hold Marin's bail money on August 22, 2018, Marin's current motion is actually one for reconsideration that is untimely. *See United States v. Yannotti*, 457 F. Supp. 2d 385, 388–89 (S.D.N.Y. 2006) ("[M]otions for reconsideration in criminal cases have traditionally been allowed within the Second Circuit. In deciding such motions, district courts have applied the standard found in Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ('Local Rule 6.3')."); Local Rule 6.3 (motions for reconsideration must be filed within fourteen days of the decision as to which reconsideration is sought). The Court nonetheless addresses the merits of Marin's motion.

[3] To the extent this Memorandum & Order references attorney-client protected communications described in Marin's *ex parte* submission, that information has been redacted in the publicly filed version, as well as the one provided to the government.

a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution or penalty cannot be imposed for the offense the defendant committed or that the defendant would suffer an undue hardship. This section will not apply to any third party surety.[4]

### III. Defendant Marin Fails to Satisfy the Requirements of Section 2044 to Permit the Release of Bail Funds

Section 2044 plainly governs Defendant Marin's motion to release his cash bond funds. Marin has been convicted, and his sentencing is still pending because the restitution portion of the sentence has yet to be determined and imposed.[5] Under these circumstances, Section 2044 precludes the Court from releasing "any money deposited for bond purposes," unless Marin can show that no "assessment, fine, restitution or penalty" can be imposed for the offenses of conviction, or that Marin "would suffer an undue hardship." Marin has not demonstrated either.

First, Marin clearly cannot, and has not attempted to, demonstrate the impossibility of financial penalties or restitution being imposed in this matter. The Court has already ordered forfeiture of $3,335,593 and fines totaling $1.2 million against Marin individually, and restitution may be imposed against Marin and his co-defendants jointly and severally, based on losses claimed by FIFA, CONMEBOL, and CONCACAF. 18 U.S.C. § 3663A.

Second, while not acknowledging the applicability of Section 2044, Marin argues, in effect, that he will suffer undue hardship by virtue of being deprived of the counsel of his choice

---

[4] Marin does not argue that the cash posted as part of his bail belongs to a third party; indeed, Marin argues that the money belongs to him. (Dkt. 1018, at 3 ("Mr. Marin seeks the release of funds that he *presently owns*.") (emphasis in original).)

[5] The Court notes that both at the sentencing proceeding on August 22, 2018 and in the parties' subsequent joint filings, Marin acknowledged that his sentence is not yet final due to the outstanding restitution issue. (Dkts. 1018, at 4; 1053-1, at 2.)

for his appeal. Marin casts this argument as one implicating Marin's rights under the Sixth Amendment. However characterized, this argument lacks merit.

Relying on the Supreme Court's decision in *United States v. Luis*, 136 S. Ct. 1083 (2016), Marin argues that not releasing his bail money will prevent him from retaining counsel of his choice, *i.e.*, his current counsel, for his appeal,[6] thereby violating Marin's rights under the Sixth Amendment. *Luis* involved the pre-trial freezing of the criminal defendant's assets, pursuant to 18 U.S.C. § 1345, to prevent their dissipation pending trial and to preserve them for payment of restitution and other criminal penalties. The defendant in *Luis* sought the release of those assets as necessary to fund her defense. The Supreme Court held that because the assets were "untainted," *i.e.*, not traceable to the defendant's alleged criminal conduct (or a substitute asset), they belonged to her and should have been released so that she could use them to retain counsel of her choice to represent her. *Id*. at 1090 ("The relevant difference [from prior cases decided by the Court] consists of the fact that the property here is untainted; *i.e.*, it belongs to the defendant, pure and simple. In this respect it differs from a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime."). In reaching this conclusion, the Supreme Court reaffirmed the principle that "the Sixth Amendment

---

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Marin's attorneys explain that "the firm has devoted tremendous effort and resources to defending Mr. Marin both a trial and post-conviction" (Dkt. 1053-1, at 1), and that "the need for counsel to have access to the cash portion of Mr. Marin's bond exists because, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The deadline for counsel's withdrawal motion in the Circuit is December 4, 2018. (Dkt. 1053-1, at 2, n.3.)

4

guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." *Id*. at 1089 (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (internal quotation marks and brackets omitted)).

Based on *Luis*, Marin argues that because his bail money is "untainted," that is, there is no claim that the bail money is connected to the crimes for which Marin was convicted, these funds belong to him, and that preventing him from using them to retain counsel of his choice for his appeal violates the Sixth Amendment.[7] (Dkt. 1018, at 3.) This argument, however, ignores the fact that *Luis* involved a *pre-trial* asset freeze, whereas this case involves a *post-conviction* holding of assets. Marin dismisses this distinction, arguing that after *Luis*, the only relevant fact is "*the nature of the funds at issue,*" and not the "innocence or guilt of the defendant" (*id*. at 2 (emphasis in original)), but this distinction is critical.

First, because this motion is being made post-conviction, Section 2044 clearly applies and mandates that the Court *not* release Marin's bail money pending sentencing, unless he can show that one of the two exceptions under Section 2044 applies. While Marin suggests that the Supreme Court's holding in *Luis* allows the Court to disregard the plain language of Section 2044 and release bail funds post-conviction, so long as they are "untainted" (*id*.), he fails to cite a single case supporting this untenable proposition.[8] Marin also fails to cite any cases in which the court found

---

[7] The Court notes that this argument is somewhat misleading ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[8] Marin cites *United States v. Tardon*, 56 F. Supp.3d 1309 (S.D. Fla. 2014), in which the district court released post-conviction some of the defendant's assets that the government was seeking to forfeit as substitute assets, to allow the defendant to pay his attorneys' fees. *Id*. at 1322-

5

that a defendant not being able to hire counsel of his choice because of withheld bail funds constituted "undue hardship" for purposes of Section 2044.⁹ *See United States v. Catoggio,* 698 F.3d 64, 69 (2d Cir. 2012) (rejecting defendant's "argument that the district court's refusal [post-conviction] to release any of his money denied him the right to counsel of his choice in violation of the Sixth Amendment").¹⁰

Second, the property-based reasoning behind *Luis* with respect to pre-trial asset freezes should not be applied to the post-conviction holding of bail funds, since in the latter situation, there is a reasonable likelihood, if not certainty, that the criminal defendant will be subject to forfeiture, restitution, or some other financial penalty. Thus, it makes sense that after conviction, and absent a showing by the defendant, Section 2044 does not permit the Court to find that no monetary

---

23. *Tardon*, however, did not involve an application of Section 2044. Furthermore, in relying on *Luis*, the court failed to recognize any distinction between pre- and post-conviction restraint or holding of assets. *Tardon*, in any event, is not binding on the Court.

⁹ Indeed, this aspect of Marin's argument is internally inconsistent. On the one hand, Marin claims that without the bail money, he will be unable to hire his current counsel to represent him on appeal. On the other hand, he asserts that, given his reported assets and wealth, the Circuit is unlikely to find that he is indigent and entitled to court-appointed counsel. (Dkt. 1053-1, at 2 & n.4.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To the extent Marin is seeking the release of his bail money to pay existing debts to his attorneys for their representation up until now (Dkt. 1018, at 1), that indebtedness does not undermine his right to counsel, since he has already received the benefit of that representation.

¹⁰ Marin suggests that *Catoggio* is no longer good law after *Luis*. (Dkt. 1018, at 3, n.3.) The Court disagrees. Although the panel in *Catoggio* relied on *United States v. Monsanto,* 491 U.S. 600 (1989), the application of which was arguably limited in *Luis* to "tainted" assets seized pre-trial, that limitation does not affect the vitality of *Catoggio*, which, as here, involved the court's *post*-conviction refusal to release assets, where it was clear that the defendant would owe restitution at re-sentencing. *Catoggio,* 698 F.3d at 69 (finding reasoning from *Monsanto* "applies with 'even greater force' here because [the defendant] had already pled guilty to both the underlying fraud scheme and later to attempting to launder its proceeds from his prison cell.") (quoting *United States v. Numisgroup International Corp.*, 169 F. Supp. 2d 133, 139 (E.D.N.Y. 2001)).

penalty will be imposed and that the bail funds are, therefore, the defendant's property, which he should be able to use to retain counsel of his choice. *See Luis*, 136 S. Ct. at 1089 ("This 'fair opportunity' for the defendant to secure counsel of choice has limits. . . . [A]n indigent defendant, while entitled to adequate representation, has no right to have the Government pay for his preferred representational choice.") (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932) and citing *Caplin & Drysdale*, 491 U.S. at 624). Rather, where, as here, the defendant has been convicted of a crime that could result in the imposition of forfeiture, fines, and restitution, Section 2044 treats a defendant's bail money like "robber's loot", which must be returned to the victim. *Id*. at 1090; *see United States v. Sortini*, 497 F. App'x 738, 739 n.1 (9th Cir. 2012) (finding that Section 2044's prohibition on the release of bond monies "after entry of a plea or guilty verdict and before sentencing 'except upon a showing that . . . restitution cannot be imposed for the offense,' . . . evidences Congress's intent to keep monies belonging to and deposited by or on behalf of a defendant available for application toward any restitution obligation imposed upon the defendant") (quoting 28 U.S.C. § 2044) (emphasis omitted); *see also Caplin & Drysdale*, 491 U.S. at 626 ("A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice. A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended.").

Lastly, even accepting *arguendo* that the right of a defendant to retain counsel of his choice can support a claim of undue hardship under Section 2044, Marin has failed to demonstrate that this is, in fact, his situation. Rather, as indicated in Marin's Presentence Report and as the Court found at sentencing, Marin has a vast amount of personal wealth, both in the United States and Brazil. Marin has thus failed to establish that he will not be able to keep or retain counsel of his

7

choice for his appeal.  Furthermore, even if Marin could demonstrate that he is effectively indigent, the Court would not find that this constitutes an undue hardship under Section 2044, since upon such a showing, Marin would be entitled to court-appointed counsel on appeal.

Marin represents that, in addition to the $1 million cash bond amount, he has significant assets in the United States, including nearly $5 million in his Firelli account and his interest in a $2.5 million apartment in Manhattan, and that the funds in the Firelli account alone will cover the forfeiture and fines awarded in this case.  (Dkt. 1053, at 2.)  However, as discussed, the amount of restitution owed by Marin, if any, has yet to be determined.  If the amount of restitution that Marin owes is less than the value of his U.S. assets that are not subject to forfeiture and fine, Marin may renew his request to release his bail money.

## CONCLUSION

Defendant Marin's motion to release the cash posted as part of his bail bond is denied, but may be renewed after the Court's determination of restitution in this case.

SO ORDERED.

 /s/ Pamela K. Chen      
PAMELA K. CHEN
United States District Judge

Dated: October 24, 2018
       Brooklyn, New York