UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE MARIA MARIN &<br>JUAN ANGEL NAPOUT,<br><br>Defendants. | Case No. 15 CR 252 (PKC) |

## JOINT MEMORANDUM
## OPPOSING CONCACAF'S MOTION FOR RECONSIDERATION

**BALLARD SPAHR LLP**
Charles A. Stillman
James A. Mitchell
Bradley R. Gershel

*Attorneys for José Maria Marin*

**HUGHES HUBBARD & REED LLP**
Marc A. Weinstein

*Attorneys for Juan Ángel Napout*

Defendants José Maria Marin and Juan Ángel Napout respectfully submit this memorandum in opposition to CONCACAF's December 4, 2018 motion for reconsideration (Dkt. 1127) (the "Motion" or "Mot.") of this Court's November 20, 2018 Restitution Order (Dkt. 1084) (the "Order").

## BACKGROUND

CONCACAF originally estimated its lost revenue for the 2016 Centenario at between $27.8 million and $32.8 million. (Dkt. 1013.) After defense counsel and the Government each noted significant flaws in CONCACAF's loss model, CONCACAF revised its methodology and decreased its estimated loss to between roughly $2.9 million and $7.9 million. (Dkt. 1045.) As part of its revised methodology, CONCACAF estimated the amount it claimed it would have earned absent any corruption, and subtracted expenses, including $1.8 million in legal and consulting fees spent to renegotiate certain Centenario contracts (the "Contract Renegotiation Fees"). (Dkt. 1045 at 2–3; Dkt. 1045-6.) The Court found CONCACAF's loss estimate "far from sound" and amounting to "sheer speculation."[1] (Order at 14.)

At the end of the October 4, 2018 restitution hearing, CONCACAF's counsel advanced yet another measure of loss, arguing that the Court should consider the Contract Renegotiation Fees as an independent minimum measure of loss. (10/04/2018 Hearing Tr. at 168–69.) CONCACAF had not advanced this theory of loss in any of its pre-hearing submissions, and neither defense counsel nor the government had an opportunity to respond to the argument in their written submissions or at the October 4th hearing.

---

1. The Order also rejected CONCACAF's alternative measure of damages, the $10 million in bribes received by Jeffrey Webb. (Order at 15.)

92994910_1

**ARGUMENT**

The Court should reject CONCACAF's newest loss theory because (1) CONCACAF does not meet the standard to warrant reconsideration, and (2) CONCACAF's request is not permitted under the MVRA,[2] as its theory is contrary to the Supreme Court's decision in *Lagos v. United States*, 138 S. Ct. 1684 (2018), and its losses must be offset by gains from the renegotiated tournaments contracts.

**I.    CONCACAF'S RESTITUTION REQUEST DOES NOT MERIT RECONSIDERATION.**

A motion for reconsideration is heard under a "strict" standard, and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners*, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).[3]  A motion for reconsideration is not a means for "presenting the case under new theories." *Id*. (citation omitted).  "It is well-settled that a party may move for reconsideration and obtain relief only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (citation omitted).  None of those reasons exist here, as CONCACAF fails to identify any intervening change in controlling law, the availability of new evidence, or any clear error or manifest injustice requiring attention.

In its Order, the Court considered the Contract Renegotiation Fees as part of its analysis of the loss methodology suggested in CONCACAF's October 3, 2018 letter.  Specifically,

---

2.  Mandatory Victims Restitution Act, 18 U.S.C. § 3663A.

3.  The standard governing a motion for reconsideration in a criminal case is no different than in a civil case.  *United States v. Gomez*, No. 08CR429 (DLC), 2016 WL 2939163, at *2 (S.D.N.Y. May 19, 2016).

2

CONCACAF subtracted the roughly $1.8 million in Contract Renegotiation Fees from the total profits CONCACAF claimed would have been generated by the Centenario absent corruption in an attempt to demonstrate a net loss. (Dkt. 1045 at 2–3; Dkt. 1045-6.) The Court rejected this methodology, finding it "far from sound," and found that "CONCACAF has provided the Court with no metric or methodology by which it can determine what the total revenue for the Centenario would have been but for Defendants' corruption." (Order at 14.) Because, as argued below, the $1.8 million in Contract Renegotiation Fees cannot be a measure of damages independent of the total revenue that CONCACAF would have generated for the tournament absent corruption, in rejecting the methodology that contained the Contract Renegotiation Fees, the Court also rejected these fees as a measure of loss.

## II. CONCACAF'S REQUEST FOR THE CONTRACT RENEGOTATION FEES FAILS UNDER THE MVRA.

Even if the Court chooses to reconsider the Order, CONCACAF's new measure of loss should be rejected.

*First*, CONCACAF's suggested measure of loss – legal and consulting fees incurred renegotiating contracts for the Centenario – is precluded by the Supreme Court's decision in *Lagos* and the Order. *Lagos* determined that the MVRA does not provide for "attorneys, accountants, and consultants" fees for work done in "private investigations and civil or bankruptcy litigation." 138 U.S. at 1687–88. Thus, *Lagos* demands that under the MVRA a victim cannot recover legal fees other than those incurred responding directly to government requests in aid of the investigation or prosecution of the case. (Order at 8 (interpreting "*Lagos* as limiting restitution to expenses incurred for investigatory activities that the government expressly and specifically

'invited or requested.'")). CONCACAF cannot circumvent these rulings by converting its claim for legal and consulting fees into a claim for "mitigation expenses."[4]

*Second*, even assuming that *Lagos* does not preclude consideration of CONCACAF's legal fees as loss, such losses would be included in the calculation of CONCACAF's out-of-pocket losses, against which the Court must, as it did, offset any gains from the recoupment of the property. The MVRA provides that in calculating restitution, the court must subtract the "value of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B)(ii). As the "purpose of restitution is essentially compensatory," *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006), the MVRA prohibits victims from receiving "'a windfall,' i.e., more in restitution than [they] actually lost," *id. at* 117 (quoting *United States v. Arutunoff,* 1 F.3d 1112, 1121 (10th Cir. 1993)).

Looking only at the Contract Renegotiation Fees ignores the MVRA's demands that the value of any returned property be offset against any losses. It is undisputed that CONCACAF made substantially more from the renegotiated contracts, an amount more than enough to offset the fees spent to negotiate them. CONCACAF has been unable to establish otherwise, as the Court has already ruled that "CONCACAF has provided the Court with no metric or methodology by which it can determine what the total revenue for the Centenario would have been but for Defendants' corruption." (Order at 14.)[5]

---

4. It is telling that CONCACAF does not state under which subsection of the MVRA it seeks to collect these "mitigation expenses." Any corporate victim could easily eviscerate the holding in *Lagos* by reframing investigation or other civil legal fees as "mitigation expenses" for recovering the value of contracts, the value of property, or the value of a brand and the victim's reputation.

5. CONCACAF's expert was unable to advance the ball, as he did not attempt to calculate any damages. While a victim need not calculate loss with precision, a guesstimate does not suffice.

4

92994910_1

CONCACAF cites three cases in support of its motion, while conceding that it did not cite any such cases to the Court prior to the Court's Order. Regardless, none of the cases CONCACAF now cites hold that Contract Renegotiation Fees are available under the MVRA. And, in the two cited cases in which offset is an issue, the courts considered any mitigation costs in a larger analysis of the total costs and gains to the victim. *See United States v. Dodd*, 978 F. Supp. 2d 404, 425 (M.D. Pa. 2013) ("Accordingly, the amount of restitution owed to any mortgagee … will be reduced by the eventual offset value from a foreclosure sale on the subject property."); *United States v. Angerman*, 727 F. App'x 214, 214 (7th Cir. 2018) ("The district judge deducted the foreclosure sale price from the amount owed on the mortgage."). Doing so here, as the Court must, results in no compensable loss.[6]

## CONCLUSION

For the reasons set forth herein, Mr. Marin and Mr. Napout respectfully request that the Court deny CONCACAF's motion to reconsider.

Respectfully submitted,

| **BALLARD SPAHR LLP** | **HUGHES HUBBARD & REED LLP** |
|---|---|
| /s/ Charles A. Stillman | /s/ Marc A. Weinstein |
| Charles A. Stillman | Marc A. Weinstein |
| James A. Mitchell | One Battery Park Plaza |
| Bradley R. Gershel | New York, NY 10004-1482 |
| 1675 Broadway, 19th Floor | T. 212.837.6000 |
| New York, NY 10019-5820 | marc.weinstein@hugheshubbard.com |
| T. 212.223.0200 | |
| stillmanc@ballardspahr.com | |

---

6. Should the Court grant the motion to reconsider, defendants request an opportunity to contest the reasonableness of the requested fees.

5

92994910_1

## **CERTIFICATE OF SERVICE**

     **I HEREBY CERTIFY** that on December 18, 2018, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that this document is being served simultaneously on all counsel of record in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF, or in another authorized manner.

                                       /s/ Marc A. Weinstein

                                       **HUGHES HUBBARD & REED LLP**
                                       Marc A. Weinstein
                                       One Battery Park Plaza
                                       New York, NY 10004-1482
                                       T. 212.837.6000
                                       marc.weinstein@hugheshubbard.com

92994910_1